709 F.2d 298
 UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Bullock HENRY, a/k/a Imari Abubakari Obadele,
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wayne JAMES, a/k/a Offoga Quaddus, and Thomas Norman, a/k/a
Hekima Ana, Defendants-Appellants.
 Nos. 81-4107, 81-4254.
 United States Court of Appeals,
Fifth Circuit.
 June 28, 1983.
 
 Fred L. Banks, Jr., Jackson, Miss., for defendant-appellant in No. 81-4107.
 Barbara A. Phillips, San Francisco, Cal., for defendants-appellants in No. 81-4254.
 James B. Tucker, Asst. U.S. Atty., Jackson, Miss., Patty Merkamp Stemler, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.
 Appeals from the United States District Court for the Southern District of Mississippi.
 Before CLARK, Chief Judge, and BROWN, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY and HIGGINBOTHAM, Circuit Judges.
 RANDALL, Circuit Judge:
 
 
 1
 We are called upon to affirm or reverse the judgment of the district court increasing a valid sentence--which this court affirmed long ago and which the defendant here had already begun to serve--solely because the defendant had successfully challenged, under rule 35 of the Federal Rules of Criminal Procedure, another sentence that had been imposed in connection with the same criminal transaction.[1] The case arises indirectly out of a twenty-minute machine gun and tear gas shoot-out between certain members of the so-called Republic of New Africa and state and federal officers on August 18, 1971. Its resolution turns on the meaning of rule 35, the present-day codification of the old common-law motion to correct an illegal sentence. For the reasons set out below, we vacate the district court's order and remand the case for further proceedings.[2]
 
 
 2
 I. THE FACTS.
 
 
 3
 Although this case has been before us in one form or another virtually constantly for the past eight years, the facts relevant to this particular appeal can be readily summarized.
 
 
 4
 For his various activities in connection with the shoot-out of August 18, defendant Richard Bullock Henry was convicted in the district court of, first, conspiring to assault federal officers and to use a firearm in the commission of a felony in violation of 18 U.S.C. Sec. 371 (1976); second, assaulting and interfering with federal officers in violation of 18 U.S.C. Sec. 111; and third, using a firearm to commit a felony in violation of 18 U.S.C. Sec. 924(c)(1).[3] The trial court sentenced Henry to five years on the first conviction, seven on the second, and five on the third, but since the first two sentences were concurrent the total sentence was seven plus five, or twelve years. Henry duly appealed his convictions and sentences under all three charges. This court affirmed them all in an opinion dated March 19, 1976. United States v. James, 528 F.2d 999 (5th Cir.), cert. denied, 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976). This court's mandate affirming "[a]ll [of Henry's] convictions" issued the same day, and Henry began to serve his sentences on or about December 29, 1976.
 
 
 5
 There matters remained until 1978, when the Supreme Court handed down its opinion in Simpson v. United States, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), and this court handed down its opinion in United States v. Shillingford, 586 F.2d 372 (5th Cir.1978). As it was first interpreted (over a vigorous dissent) in Shillingford, Simpson prohibited the government from charging a defendant with violating both section 924(c)(1) and section 111 because both statutes proscribe essentially the same conduct and because, as a matter of statutory construction, Congress had not intended that both apply at the same time. In the footnote that provoked the dissent, this court further noted in Shillingford that the district court on remand would not have to confine itself to vacating the sentence under section 924(c)(1), but could choose, at its option, to vacate either the section 924(c)(1) or the section 111 sentence. 586 F.2d at 376 n. 7. Taking note of the Simpson decision, Henry filed under Federal Rule of Criminal Procedure 35 a motion to vacate his sentence under section 924(c)(1). He insisted, however, that the district court did not have the option of vacating either the section 924(c)(1) or the section 111 sentence, but rather had the power to vacate only the sentence that he was challenging as illegal, i.e., the section 924(c)(1) sentence.[4]
 
 
 6
 The district court decided Henry's rule 35 motion on March 7, 1979. The court's short, two-page order cited Shillingford and vacated Henry's seven-year sentence under section 111. This left intact his five-year consecutive sentences under sections 371 and 924(c)(1), which meant that his over-all term of imprisonment had been reduced from twelve to ten years. Henry immediately appealed, but a panel of this court affirmed on the ground that it was "controlled by the directions" of the earlier decision in Shillingford, which had authorized the "either" approach to the problem. United States v. Henry, 611 F.2d 983, 984 (5th Cir.1979). Henry then filed a timely petition for rehearing en banc.
 
 
 7
 After we had voted for the first time to hear Henry's case en banc but before oral argument could be scheduled, the Supreme Court handed down its decision in Busic v. United States, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). Busic held, in essence, that Henry and the dissent in Shillingford had been correct, and that when a defendant engages in conduct that arguably violates both section 111 and section 924(c)(1), he may be convicted and sentenced only under section 111. This en banc court accordingly vacated Henry's "sentence" and remanded the case to the district court for further proceedings consistent with Busic. United States v. Henry, 621 F.2d 763 (5th Cir.1980) (en banc).[5]
 
 
 8
 On March 20, 1981, the district court rendered the judgment from which Henry now appeals. The judgment in effect proceeded in three steps. First, it vacated the five-year sentence under section 924(c)(1) and reinstated the seven-year sentence under section 111, thus leaving Henry with concurrent sentences of five and seven years for a total of seven years. Second, upon an oral motion from the government, it altered the seven-year sentence to have it run consecutively with the first, for a new total of twelve years. And third, it reduced the seven-year sentence to five years, for a final effective total of ten years. In so doing, the district court specifically acknowledged that this court, in remanding the case for sentencing in accordance with Busic, did not vacate the sentence imposed under count two of the indictment or the entire sentence imposed under all three counts. The court also acknowledged the government's concession that Henry had attacked only the legality of his sentence on count three.[6] The district court embarked upon its three-step procedure, it said, in order to carry out its original sentencing intent, which was that the defendant be seriously dealt with in accordance with the seriousness of his crimes.
 
 
 9
 Henry again appealed to this court. He did not challenge the district court's power to reinstate the original sentence under section 111, but he insisted that that was all the court could do. He particularly urged that the court could not alter the original seven-year sentence under section 111 by making it consecutive with that under section 371 because the court did not have jurisdiction to increase a sentence that was, in fact, perfectly legal. The panel disagreed and held that if one sentence in a multipart sentencing scheme is illegal, then the entire scheme is illegal and may be altered according to the discretion of the trial court. 680 F.2d at 412.
 
 
 10
 Henry then successfully petitioned--for the second time--to have his case reheard by the full en banc court. He continues to argue that the district court had no jurisdiction to alter the legal sentence under section 111, which he had already begun to serve and which he had never even challenged. The government, on the other hand, argues that the allocation of years between the parts of any multipart conviction is largely fictional, and that judges really sentence defendants for criminal transactions, viewed as a whole, and not merely for the various hypertechnically defined components of a multipart verdict of conviction. Strict adherence to the original allocation of years between the various offenses, runs the government's argument, could easily result in giving Henry an ill-deserved three-year windfall by virtue of his appeal. (Three years is the difference between the ten-year sentence that the government thinks Henry deserves, in light of the sentencing court's original intent, and the seven-year sentence Henry thinks he is required to be given if his section 924(c)(1) conviction is vacated in accordance with Busic.) In the government's view, the point is not that the effective number of years that Henry is required to serve under the first two convictions has been increased from seven to ten years; rather, the point is that the sentence for the entire transaction has been reduced from twelve to ten years. Henry has been rewarded, not penalized, for bringing his motion under rule 35. This view, the government concludes, does no more than take into account the day-to-day reality of how most trial judges actually pass sentence.
 
 
 11
 We disagree. We think that experienced federal district judges are well aware that they cannot revise upward sentences on counts, already affirmed on appeal, when other counts are vacated under rule 35, and that they take this fact into account in constructing their overall sentencing schemes. However, even if we concede, arguendo, that the government's view of what goes on in the heads of many sentencing judges is correct, we are not willing to concede that the three-year decrease in Henry's total sentence in issue here is an undeserved "windfall reduction." On the contrary, we think that it is the lawful result of a successful challenge to an illegal sentence. We also think that it would be inappropriate to create out of whole cloth what would amount to a government right to cross-appeal in sentencing cases, and that, under circumstances such as those present here, a final and lawful sentence cannot be increased.[7] We therefore hold that because there is no statutory or other authority for what the district court did in this case, its judgment must be reversed.
 
 
 12
 II. THIS COURT'S PRIOR MANDATE AND THE LAW OF THE CASE.
 
 
 13
 The present case has arisen under Henry's rule 35 motion to correct his illegal sentence under section 924(c)(1). Authority to correct the sentence imposed for the same criminal transaction under section 111 must therefore be found, if at all, in our prior mandates in this case, in the text of the rule, or in some other "inherent" power of the courts. For reasons which, we hope, will quickly become apparent, the problem is best approached by starting with our prior mandates, then turning to the history of the rule, and ending with the rule itself.
 
 
 14
 Because the government urged at oral argument that our en banc opinion and mandate in this case, see 621 F.2d at 763, vacated all three of Henry's sentences--thus giving the district court the authority to enter the increased sentence under section 111--the threshold issue in this case[8] concerns the meaning of that opinion and mandate. We note at the outset, however, that the panel that initially decided this case last year (680 F.2d at 403), the district court (see note 6, supra ) and the government's panel and en banc briefs (four in number) have all assumed, expressly or implicitly, that our prior mandate gave the district court no authority to increase Henry's sentence under section 111. Indeed, the government addressed this issue for the first time in response to questioning at oral argument. We think it plain that the issue has not heretofore been addressed because it is so clear-cut: our prior en banc mandate simply cannot be read as the government now urges us to read it.
 
 
 15
 We handed down our first en banc opinion in this case on July 16, 1980. 621 F.2d at 763. A mandate with virtually identical wording issued twenty-three days later:
 
 
 16
 It is now here ordered and adjudged by this Court that the sentence of the said District Court in this cause is hereby vacated by the Court en banc; and that this cause be and the same is hereby remanded to the District Court for further proceedings consistent with the decision of the United States Supreme Court in Busic v. United States, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980).
 
 
 17
 (full citations supplied). We think that a vacation of "the sentence" in light of the Supreme Court's decision in Busic meant only that the sentence under section 924(c)(1) was vacated.
 
 
 18
 An analysis of the Supreme Court's decision in Busic compels this reading. Busic held that if a federal criminal statute provides its own use-of-a-weapon sentence enhancement provision, a sentence under the general enhancement provision, section 924(c), cannot be imposed. 446 U.S. at 404, 100 S.Ct. at 1751. Our vacation of Henry's "sentence" in light of Busic, as the district court expressly recognized,[9] thus can only have mandated a vacation of that which was impermissible under that case, namely, the imposition of a sentence under section 924(c)(1). Furthermore, since the Supreme Court's earlier opinion in Simpson had held that a sentence under both the general and a specific enhancement provision was illegal, 435 U.S. at 16, 98 S.Ct. at 914, Busic also necessarily stands for the proposition that a sentence under the specific provision (here, section 111) is legal and cannot be vacated. 446 U.S. at 404-07, 100 S.Ct. at 1751-53. Our earlier remand for "proceedings consistent with" Busic thus directed the district court to reinstate (or acknowledge the continuing validity of) Henry's section 111 sentence.
 
 
 19
 We recognize that footnote nineteen of the Supreme Court's opinion in Busic adverted to the possibility of an increased sentence under section 111 on remand, but we do not think that this reference undermines our analysis here. Footnote nineteen reads:
 
 
 20
 The Government makes a conditional plea that should we find Sec. 924(c) to be inapplicable to [Busic ] we vacate not only the Sec. 924(c) sentence[ ], but also [that] imposed by the District Court under Sec. 111.... The Court of Appeals has not considered this contention ... and we are reluctant to do so without the benefit of that court's views. Accordingly, we express no opinion as to whether in the particular circumstances of th[is] case[ ] such a disposition would be permissible.
 
 
 21
 446 U.S. at 412 n. 19, 100 S.Ct. at 1756 n. 19. The Court pointedly refused to consider whether Busic's section 111 sentence could be altered. We therefore think that the reference to Busic in our en banc mandate--which may perhaps be read as containing an implicit reference to the possibility of resentencing under section 111--cannot be fairly construed as actually vacating Henry's section 111 sentence to permit an upward resentencing on remand. If we had intended to do what the Supreme Court's opinion in Busic refused to address, we would have done so specifically.
 
 
 22
 Busic did, moreover, come to the Supreme Court (and to the Third Circuit on remand) in a completely different procedural posture than that in which Henry has come to us. See United States v. Busic, 639 F.2d 940 (3d Cir.1981), on remand from 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), cert. denied, 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981). Busic was a direct criminal appeal, and Henry is not. This difference is noteworthy because it means that the government had an additional hurdle to overcome in Henry that it did not have in Busic. Because Busic was a direct appeal, and because Busic's attorney noticed an appeal from the entire "judgment of conviction and sentence entered in th[at] action," United States v. Busic, Criminal No. 76-137 (W.D.Pa. record entry for Mar. 11, 1977), all of Busic's sentences were arguably before the Supreme Court and the Third Circuit on remand.[10] The only authority that the government cited to the Supreme Court for its position on resentencing under section 111 was 28 U.S.C. Sec. 2106 (1976). See Brief for the United States at 60 & n. 36, Busic v. United States, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) (only mention of procedural issue in brief confined to short discussion of section 2106). Section 2106,[11] by its express terms, applies only to judgments and orders of a district court that have already been "lawfully brought before [the appellate court] for review." 28 U.S.C. Sec. 2106. Because all of Busic's sentences were arguably before the Supreme Court and the Third Circuit on remand, reliance by the Third Circuit on section 2106 as authority for vacating Busic's section 111 sentence and for resentencing was arguably appropriate.[12]
 
 
 23
 Procedurally, Henry is a different case. At oral argument, the government argued that the 1980 en banc court, relying sub silentio on section 2106, vacated Henry's unchallenged (and lawful) section 111 sentence. The government in effect argues that in challenging the district court's order of March 7, 1979--the order that vacated the unchallenged section 111 sentence and left the challenged section 924(c) sentence intact--Henry placed all of his sentences in issue, thus authorizing the 1980 en banc court to use section 2106 to vacate the original section 111 sentence for an increase on remand. The government's argument really amounts to a contention that one who complains about a district court's wrongful tampering with a final sentence gives the court of appeals jurisdiction under section 2106 to, in fact, tamper with that sentence. Whatever the answer to this argument--and we need not answer it today--we think it exceedingly unlikely that the en banc court in 1980 would have skipped over so substantial a problem without at least referring to it. This strengthens our conclusion that the 1980 mandate provided no authority to the district court to vacate Henry's original section 111 sentence and to reimpose a longer one.
 
 
 24
 This conclusion necessarily means that the order of the district court currently before us, that of March 20, 1981, has violated the original mandate of this court (on Henry's direct appeal) affirming all of Henry's convictions.[13] The principle that a district court may not violate the mandate of a circuit court of appeals and may not alter the law of the case so established is basic.[14] The cases establishing it in this particular context are old, but their validity can hardly be questioned. When a judge of the Southern District of New York attempted, in a like case, to change the duration of a series of six-year concurrent sentences, the Second Circuit commented:
 
 
 25
 Now we understand it to be well-established law that a judgment which the appellate court has affirmed, and by its mandate directed the court below to enforce, cannot thereafter be altered in any way by the lower court.
 
 
 26
 United States v. Howe, 280 F. 815, 820 (2d Cir.) (citing In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895)), cert. denied, 259 U.S. 587, 42 S.Ct. 590, 66 L.Ed. 1077 (1922). Some years later, in a case apparently brought on a common-law motion to correct sentence but otherwise virtually identical to the present case, the Seventh Circuit had occasion to look for contrary authority and was unable to find any:
 
 
 27
 We have made a careful search for and study of cases and we have found none which has upheld the authority of a trial court to change or alter a lawful judgment after affirmance by an appellate court, and we might add that we have found no case which sustains the authority of this court to give such a direction.
 
 
 28
 United States v. Tuffanelli, 138 F.2d 981, 983 (7th Cir.1943); accord, Pugliese v. United States, 353 F.2d 514, 516 (1st Cir.1965) (same, under rule 35). We, too, have searched for authorities that might establish the power of the district court to alter the law of the case in circumstances such as those in this case, and there appear to be none. See 18 C. Wright, A. Miller & E. Cooper, supra n. 14, Sec. 4478.
 
 
 29
 In sum, our 1980 opinion and remand in light of Busic gave the district court no authority to tamper with the sentence under section 111 because Busic had held that the section 111 sentence was legal and the section 924(c)(1) sentence was illegal--and rule 35 authorizes the vacation only of illegal sentences. The effect of our 1980 en banc mandate was to leave intact our 1976 panel opinion and mandate affirming Henry's sentence under section 111. Certainly our 1980 mandate conferred on the district court no greater authority.
 
 
 30
 III. THE INHERENT POWER OF THE COURTS AND RULE 35.
 
 
 31
 If we assume, arguendo, that the district court's section 111 order of March 20, 1981, was not prohibited by our prior mandates and that it was not authorized by those mandates, then we look to see whether that order could have been entered pursuant to some inherent authority of the district court or to authority conferred by rule 35. We now turn to those questions.
 
 
 32
 A. Inherent Power and the History of Rule 35.
 
 
 33
 The government has stated on this appeal that "[a]lthough the history regarding the drafting of rule 35 is ... sparse, there is nothing in that history to suggest" that the district court could not resentence Henry under section 111 after his successful challenge to his sentence under section 924(c)(1). We find that the opposite is true. There is a great deal in the history of rule 35 to suggest that the district court could not lawfully resentence Henry under section 111.
 
 
 34
 The portion of rule 35 that is directly relevant to this case is subsection (a), which reads in pertinent part as follows: "The court may correct an illegal sentence at any time."[15] It was first promulgated in 1946 pursuant to the Act of March 8, 1934, ch. 49, 48 Stat. 399 (current and virtually unamended version at 18 U.S.C. Sec. 3772 (1976)), which, unlike many rules enabling acts, authorizes the Supreme Court to put postverdict procedural rules into immediate effect without first submitting them to Congress for approval or possible veto. See 327 U.S. 821-25, 854-56 (1946) (promulgating the rule). The rule's only "legislative" history therefore takes the form of Advisory Committee notes and drafts. And like the Supreme Court in McCarthy v. United States, 394 U.S. 459, 465-67, 89 S.Ct. 1166, 1170-71, 22 L.Ed.2d 418 (1969) (extensively relying upon Advisory Committee notes for interpretation of Fed.R.Crim.P. 11), we have found the Advisory Committee materials quite helpful.
 
 
 35
 The original version of the rule had two parts. The first, as quoted immediately above, gave the courts the power to correct an "illegal sentence" at any time; the second (now set forth in subsection (b) of the rule) gave the courts the power to reduce a legal sentence within sixty (now 120) days. 327 U.S. at 856. The official Advisory Committee note to the rule then states only that--except for the insertion of the sixty-day period for the old term-of-court limitation in what is now subsection (b) of the rule--both parts of the rule "continue[ ] existing [decisional] law." Advisory Committee Note to Rule 35, reprinted in 18 U.S.C.App. at 1461 (1976). The various printed preliminary drafts give no further guidance beyond the addition of a treatise citation for the reference to "existing law." Advisory Committee on Rules of Criminal Procedure, Federal Rules of Criminal Procedure, Second Preliminary Draft 132 (1944) (citing 5 G. Longsdorf, Cyclopedia of Federal Procedure Sec. 2468 (1929)).
 
 
 36
 A careful interpretation of the rule must therefore necessarily rest upon both the text itself and upon an understanding of "existing law" as it stood in 1946. If there was no inherent power in 1946 to do what the district court in this case has done, then there also is none today.
 
 
 37
 The authorities on this point leave virtually no room for doubt. See generally 5 G. Longsdorf, supra, Sec. 2468; 5 L. Orfield, Criminal Procedure under the Federal Rules Secs. 35:1 to :3, at 455-64 (1967) (subchapter entitled "The Law Before Rule 35"). As eventually set out in the rule, a court in the years before 1946 had only the power, first, to reduce a legal sentence before the end of the term of court during which the sentence was imposed, and second, to correct an illegal sentence at any time. If the court failed to act before the end of the term, it lost all power to reduce the sentence. See, e.g., United States v. Benz, 282 U.S. 304, 306-07, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1931). There was no "inherent" power of any kind. See, e.g., United States v. Howe, 280 F. 815 (2d Cir.) (reviewing the law), cert. denied, 259 U.S. 587, 42 S.Ct. 590, 66 L.Ed. 1077 (1922). The court's correlative power to correct an illegal sentence at any time, on the other hand, sprang from the court's want of jurisdiction to impose the illegal sentence in the first place:
 
 
 38
 It is quite plain ... that to obtain ["relief by motion to correct the sentence"], the sentence must have been void, that is, have been rendered without jurisdiction. Mere errors in arriving at the sentence and judgment must be corrected by appeal.... [A] showing that the judgment was entered without jurisdiction is required.
 
 
 39
 Williams v. United States, 148 F.2d 923, 924 (5th Cir.) (footnote omitted), cert. denied, 325 U.S. 888, 65 S.Ct. 1574, 89 L.Ed. 2002 (1945). Accord, In re Bonner, 151 U.S. 242, 254-56, 14 S.Ct. 323, 324, 38 L.Ed. 149 (1894); In re Mills, 135 U.S. 263, 270, 10 S.Ct. 762, 764, 34 L.Ed. 107 (1890). The court's "power" to correct an illegal sentence at any time, then, was not a real power in anything like the normal sense; rather, it was more in the nature of a duty to confess error and acknowledge that the imposition of the initial sentence exceeded the court's statutory authority and was therefore a legal nullity. See 5 G. Longsdorf, supra, Sec. 2468, at 781-82 ("[T]he judgment [and sentence] cannot be set aside after the term expires, unless it is void."); cf. Ex parte Watkins, 28 U.S. (3 Pet.) 193, 203, 7 L.Ed. 650 (1830) (Marshall, C.J.) ("An imprisonment under a judgment cannot be unlawful, unless that judgment be an absolute nullity; and it is not a nullity if the court has general jurisdiction of the subject, although it should be erroneous."), quoted with approval in United States v. Pridgeon, 153 U.S. 48, 62, 14 S.Ct. 746, 751, 38 L.Ed. 631 (1894) (applying Ex parte Watkins, which was a habeas case, to resolve an "illegal sentence" issue).
 
 
 40
 If a sentence was only partly illegal, as, for instance, when a three-year sentence was imposed where the statute authorized only a one-year internment, Williams v. United States, 168 U.S. 382, 385, 389, 18 S.Ct. 92, 93, 94, 42 L.Ed. 509 (1897), the usual method of proceeding was to strike the excessive or illegal portion of the sentence, and leave the rest undisturbed. See, e.g., Williams, 168 U.S. at 389, 18 S.Ct. at 94. According to the Supreme Court,
 
 
 41
 the sound rule is that a sentence is legal so far as it is within the provisions of law and the jurisdiction of the court over the person and offense, and only void as to the excess when such excess is separable, and may be dealt with without disturbing the valid portion of the sentence.
 
 
 42
 Pridgeon, supra, 153 U.S. at 62, 14 S.Ct. at 751 ("hard labor" requirement of five-year sentence must be stricken because it was illegal in that federal court did not have jurisdiction to impose it); accord, Reynolds v. United States, 98 U.S. 145, 168-69, 25 L.Ed. 244 (1879) (same). See also Adams v. United States, 375 F.2d 635, 638 (10th Cir.1967) (citing this part of Pridgeon with approval); Kennedy v. United States, 330 F.2d 26, 27 (9th Cir.1964) (same). The principle here is clear: a sentence may be corrected at "any time" only to the extent that it is actually illegal. Pugliese v. United States, 353 F.2d 514, 516 (1st Cir.1965) ("[T]he word 'illegal' [in rule 35] is essentially a means to an end. The illegality could not exceed what needs to be corrected."). The court must leave the valid portion alone.[16]
 
 
 43
 It seems likely, moreover, that those who drafted and approved rule 35 assumed that the district court did not have the power to act as it did for still another reason. As already noted above, the Advisory Committee notes to rule 35 do little more than explain that the rule codified the then existing law. And, quite apart from the question of the court's inherent power to act, the law of 1946 would unquestionably have prohibited what the district court did in this case.
 
 
 44
 Henry argues that the threshold issue here is whether his sentences under the first two convictions could be raised from a total of seven to ten years without violating the double jeopardy guarantee of the fifth amendment. Before the Supreme Court handed down its opinion in United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), it seemed clear that the penalty under the two convictions could not have been raised without running afoul of the double jeopardy rule established by that Court in Ex parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874), and the Fifth Circuit in Chandler v. United States, 468 F.2d 834 (5th Cir.1972) (citing Ex parte Lange and treating it as controlling). See also United States v. Benz, 282 U.S. 304, 307, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1931).
 
 
 45
 The situation today is considerably more uncertain. DiFrancesco itself did nothing more than uphold against a double jeopardy attack the new "dangerous special offender" statute, which gives the government the right to take a direct appeal in order to increase a dangerous defendant's sentence. This holding, the Court noted, was based partly on the fact that "[t]he statute is limited in scope and is narrowly focused on the problem [of too lenient sentences] so identified," 449 U.S. at 142, 101 S.Ct. at 440, and partly on the Court's own unwillingness to take the unprecedented step of "invalidat[ing] an Act of Congress on double jeopardy grounds," 449 U.S. at 126, 101 S.Ct. at 431. At least three Justices have drawn the natural conclusion that "the Court's holding in DiFrancesco is limited to the situation in which Congress has expressly authorized an increase of sentence after the initial sentence has been set aside on direct appeal," Ralston v. Robinson, 454 U.S. 201, 224 n. 3, 102 S.Ct. 233, 238 n. 3, 70 L.Ed.2d 345 (1981) (Stevens, Brennan & O'Connor, JJ., dissenting) (emphasis in original); accord, Note, A Definition of Punishment for Implementing the Double Jeopardy Clause's Multiple-Punishment Prohibition, 90 Yale L.J. 632, 639 n. 26 (1981). The scope of the Court's holding in DiFrancesco remains uncertain principally because the Third Circuit has held that the case abolished--even in the absence of a statute--the common law's double jeopardy ban against the imposition of an increased sentence after the defendant has begun to serve his original sentence. United States v. Busic, 639 F.2d 940, 949-50 (3d Cir.), cert. denied, 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981).
 
 
 46
 It is well settled, however, that a federal court should not reach a constitutional question if the case may be disposed of on statutory or other nonconstitutional grounds. See, e.g., Simpson v. United States, 435 U.S. 6, 11-12, 98 S.Ct. 909, 912, 55 L.Ed.2d 70 (1978). In this case we do not need to reach the constitutional question because for our purposes it does not matter whether DiFrancesco overrules Chandler and the other double jeopardy cases. The Advisory Committee that drafted and the Supreme Court that approved rule 35 intended to "continue[ ] existing law," and since Ex parte Lange was part of that law, it may be fairly assumed that the rule was not drafted differently at least partly because everyone assumed that it would have been unconstitutional to have done so. See 5 G. Longsdorf, supra, Sec. 2468, at 783 & nn. 66-69. The double jeopardy rule in Ex parte Lange, in other words, survives in rule 35. No ruling of this court can change that fact. Unless and until rule 35 is rewritten through the statutorily authorized mechanism of 18 U.S.C. Sec. 3772 (1976),[17] this court is constrained to follow Ex parte Lange--as it was generally understood before the Court's ruling in DiFrancesco--in every rule 35 case.
 
 
 47
 B. The Text of Rule 35.
 
 
 48
 The text of rule 35 reinforces the above analysis.[18] The parties appear to agree that the key word in the provision "The court may correct an illegal sentence at any time" is "sentence." If the word is given what we think is its normal meaning, that is, a specific penalty imposed for a specific statutory offense, then Henry must prevail; if, on the other hand, a "sentence" within the meaning of the rule embraces the entire aggregate of the prison terms imposed upon a defendant for a single criminal transaction, viewed as a whole, then much of the analysis already presented is called into question.
 
 
 49
 The problem with the government's approach, as the following paragraphs will show, is twofold: first, the term "sentence" simply does not mean what the government wants it to mean, and second, whatever the word might mean in the abstract, it is absolutely beyond dispute that the district court in this case did not impose anything at all like a general or "transactional" sentence.
 
 
 50
 1. The Meaning of the Word "Sentence".
 
 
 51
 "A sentence in a criminal case," according to the usual understanding, "is the action of the Court fixing and declaring the legal consequences of predetermined guilt of a criminal offense." Barnes v. United States, 223 F.2d 891, 892 (5th Cir.1955) (citing 24 C.J.S. Criminal Law Sec. 1556). And a federal "offense," in turn, "means any criminal [act] ... which is in violation of an Act of Congress and is triable in any court established by Act of Congress." Bail Reform Act of 1966, Pub.L. No. 89-465, Sec. 3(a), 80 Stat. 214, 216 (codified at 18 U.S.C. Sec. 3152), reenacted without material amendment by Speedy Trial Act of 1974, Pub.L. No. 93-619, 88 Stat. 2076, 2088 (codified at 18 U.S.C. Sec. 3172 (1976)). Whether in the Speedy Trial Act or in any other context, a federal "sentence" is not general or transactional. It is the specific consequence of a specific violation of a specific federal statute.
 
 
 52
 Although the Supreme Court has generally followed this usage, see, e.g., Whalen v. United States, 445 U.S. 684, 685-86, 100 S.Ct. 1432, 1434, 63 L.Ed.2d 715 (1980); Brown v. Ohio, 432 U.S. 161, 165-66, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977), the leading case on the meaning of the word "sentence" is, in fact, Benson v. United States, 332 F.2d 288 (5th Cir.1964), a Fifth Circuit case that has subsequently been extensively quoted from with approval in two of the major treatises. See 5 L. Orfield, supra, Sec. 35:20 (textual citation with paraphrase); 3 C. Wright, Federal Practice and Procedure Sec. 527, at 114 (1982) (block quotation in text). In Benson, this court held that a sentence was not the same thing as a so-called "general sentence," and that the general sentence in that case was illegal within the meaning of rule 35 simply because it was a general sentence. Even circuits that have not adopted the rule in Benson have acknowledged that a "general sentence" is usually undesirable and, in any event, not at all like a "sentence" in the usual sense. See United States v. Corson, 449 F.2d 544, 551 (3d Cir.1971) (authorizing limited use of the "general sentence" and distinguishing it from "sentences") (for the subsequent history of Corson, see note 21, infra ).
 
 
 53
 Experts in criminology, moreover, use the term "sentence" in the same way, i.e., as the specific consequence of a specific statutory violation. The idea of a "transactional" type of sentence rarely appears. The following passage from a standard text in the field is typical: "Under the common law, a court has power to impose cumulative sentences on conviction of several offenses charged in separate indictments, with imprisonment for one commencing at the termination of imprisonment for the other." S. Rubin, The Law of Criminal Correction Sec. 21, at 481 (2d ed. 1973). See also id. Secs. 21-25, at 481-93 (subchapter entitled "Clearing Multiple Counts"). Advocates of corrections reform do tend to speak broadly in terms of "sentencing," see, e.g., Morris, Towards Principled Sentencing, 37 Md.L.Rev. 267 (1977), but whenever the discussion turns to criminal "transactions" as such, the commentators make it clear that each separate offense carries with it a separate sentence. See, e.g., Westen & Drubel, Toward a General Theory of Double Jeopardy, 1978 Sup.Ct.Rev. 81, 156-63; Comment, Cumulative Sentences for one Criminal Transaction under the Double Jeopardy Clause: Whalen v. United States, 66 Cornell L.Rev. 819 (1981); Comment, Criminal Law: Cumulative Sentencing for Offenses Within a Single Transaction, 26 U.Fla.L.Rev. 367 (1974).
 
 
 54
 2. What the District Court Did in This Case.
 
 
 55
 Disagreement with the language generally employed by the commentators and a fixed determination to overrule Benson, we hasten to point out, could do nothing to change the result in this case. If Benson were to be overruled, which we do not foresee, trial courts in the Fifth Circuit would be authorized to impose general sentences. The district court in this case may even have been tempted to do so in the proceedings below. As the government concedes, however, the district court did not impose a general sentence, Government En Banc Brief at 20, and we are at a loss to understand how we may treat the matter on appeal as though it had. The issue is not what the district court might have done, but rather what it actually did do.
 
 
 56
 This principle is fundamental. In another rule 35 case, United States v. Frady, 607 F.2d 383 (D.C.Cir.1979), the United States similarly attempted to show that the defendant's "sentence" somehow embraced all of the sentences imposed for the same criminal transaction. The District of Columbia Court of Appeals summarily rejected the government's position, and commented only that, in fact, "the sentences were not imposed as one sentence [since] [t]he punishment for each offense was separate." 607 F.2d at 385. The Second Circuit has stated with equal force that just because the trial judge could have adopted a given sentencing plan, "the matter may not be treated as though he had done so." Miller v. United States, 147 F.2d 372, 374 (2d Cir.1945). If, as the government concedes, Henry's sentences were specific and not general, and if, as the government also appears to concede, Government En Banc Brief at 20-22, Benson retains its vitality and should not be overruled, then it logically follows that his sentences should not be viewed as one general "sentence" for the purpose of interpreting that word in the text of rule 35. The government cannot have it both ways. Either Henry's sentences were one general sentence or they were not. We think that they were not. See Government En Banc Brief at 21 ("Specific penalties were imposed on each count.").
 
 
 57
 The government's argument that "sentence" within the meaning of rule 35 means all of the sentences taken together is wrong in both law and fact. Under Benson, a "sentence" in this circuit must always be specific, not general and--whatever the government thinks about the wisdom of that rule--the district court in this case unquestionably imposed specific sentences, not a general one.
 
 
 58
 3. The Import of Rule 35(b).
 
 
 59
 We think further that, no matter how we characterize what the district court did here, rule 35(b) either specifically or by implication prohibits it. First, if what the district court did here is characterized as a reduction of Henry's section 111 sentence--a reduction that the government has pointed to repeatedly--it is unquestionably prohibited by subsection (b) of the rule. Rule 35(b) states, in pertinent part, that "[t]he court may reduce a sentence within 120 days after the sentence is imposed." This time limitation, according to the Supreme Court, "is jurisdictional and may not be extended."[19] The district court in this case therefore had no power to reduce the sentence under section 111 (count II) from seven years to five, and consequently no power to make any reduction in Henry's sentence beyond that permitted by the "illegal sentence" provision of rule 35(a).[20] Second, if what the district court did here is characterized as an increase in Henry's section 111 sentence, we think that the negative pregnant inherent in rule 35(b) prohibits such an increase. See Pugliese, supra, 353 F.2d at 516 (construction of increase provision in light of "the negative pregnant implicit in Rule 35's provision for reduction"). It would be fundamentally inconsistent to say that a sentence may be reduced only within the first 120 days but that it can be increased at any time.
 
 
 60
 4. The Precedents Under Rule 35.
 
 
 61
 Finally, and despite some intimations from the parties to the contrary, this is not a case of first impression. There are at least six cases that may fairly be deemed on all fours with this one. All six arose under rule 35 (or under the pre-1946 common-law motion to correct sentence) and rely not at all, or only secondarily, upon the double jeopardy rule of Ex parte Lange. United States v. DeLeo, 644 F.2d 300 (3d Cir.1981); United States v. Corson, 449 F.2d 544 (3d Cir.1971); United States v. Welty, 426 F.2d 615 (3d Cir.1970); Pugliese v. United States, 353 F.2d 514 (1st Cir.1965); Miller v. United States, 147 F.2d 372 (2d Cir.1945); United States v. Tuffanelli, 138 F.2d 981 (7th Cir.1943) (apparently the leading case).[21] The cases speak for themselves and we see no point in giving a blow-by-blow summary of each. But the following comment from the Third Circuit bears repetition:
 
 
 62
 The [rule 35] motion was made by the defendant, and yet because his attack has been proven justified and the sentence under three of the counts must be declared invalid, the government in effect has been given an increase in the sentence under the valid count. To permit this would be to convert the relief provided by Rule 35 on behalf of defendants into a measure by which a kind of compensating remedy could be obtained by the government to preserve the effect of the invalid sentences.
 
 
 63
 The result sought by the government [also] may not be justified by resort to what is said to be the intention of the sentencing judge ....
 
 
 64
 Welty, supra, 426 F.2d at 618. The government's interpretation of the rule, in sum, is nothing short of a perversion of it.[22]
 
 
 65
 Nothing in the history or text of rule 35 gives the slightest indication that it was designed to operate as a "compensating remedy" for the government.
 
 
 66
 C. "Collateral" Support.
 
 
 67
 Although a motion brought under rule 35 is, of course, a motion "made in the original case," Heflin v. United States, 358 U.S. 415, 418 n. 7, 79 S.Ct. 451, 453 n. 7, 3 L.Ed.2d 407 (1959), our reading of the rule also finds support in the Supreme Court's rulings on collateral remedies, particularly 28 U.S.C. Sec. 2255 (1976). Rule 35 differs from section 2255 in that new decisions are more easily applied retroactively in the original case, see, e.g., Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); United States v. Shillingford, 586 F.2d 372, 375 (5th Cir.1978), the prisoner need not be "in custody," 28 U.S.C. Sec. 2255; Heflin, supra, 358 U.S. at 418, 79 S.Ct. at 453, and some rules of law may be given wider applicability, see 3 W. LaFave, Search and Seizure Sec. 11.7(f), at 758-59 & n. 172 (1978 & Supp.1983) (discussing Stone v. Powell, 428 U.S. 465, 481 n. 16, 96 S.Ct. 3037, 3046 n. 16, 49 L.Ed.2d 1067 (1976)). For our purposes, however, these differences between the two avenues of relief are not as important as one fundamental similarity: each provides a narrow exception to the principle of finality, which would normally preclude the relitigation of issues already decided. Concerns that the Supreme Court has expressed about the scope of section 2255 may therefore inform our judgment about rule 35.
 
 
 68
 We begin with the observation that virtually all of the Supreme Court's decisions in collateral relief cases are based on notions of finality that are inconsistent with the government's reading of rule 35(a). The Supreme Court's decisions in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974),
 
 
 69
 reflect a recognition by the Court of the institutional bias inherent in the judicial system against the retrial of issues that have already been decided. The doctrines of stare decisis, res judicata, the law of the case, and double jeopardy all are based, at least in part, on that deep-seated bias.
 
 
 70
 United States v. Goodwin, 457 U.S. 368, 376, 102 S.Ct. 2485, 2490-91, 73 L.Ed.2d 74 (1982). Rule 35(b), too, reflects the importance of finality in our judicial system, and subsection (a) provides an exception for illegality only because of the strong public interest in seeing that defendants are lawfully sentenced by courts that have properly assumed jurisdiction. Reopening a sentence long ago imposed and made final on appeal by a mandate of this court--to shorten it but to make it run consecutively instead of concurrently--violates this strong policy.
 
 
 71
 "The reasons for narrowly limiting the grounds for collateral attack on final judgments," according to the Supreme Court's opinion in United States v. Addonizio, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), "are well known and basic to our system of justice." 442 U.S. at 184, 99 S.Ct. at 2239 (footnote omitted). Exceptions to the rule of finality "undermine confidence in the integrity" of the courts while "inevitably impair[ing] and delay[ing] the orderly administration of justice." 442 U.S. at 184 n. 11, 99 S.Ct. at 2240 n. 11. In Addonizio the Court was urged to permit under section 2255 a reduction in a legal sentence long after that sentence had become final. The asserted ground for relief was that--according to the "sentencing expectation" or "subjective intent of the sentencing judge," 442 U.S. at 183, 187, 99 S.Ct. at 2239, 2241--Mayor Addonizio had been sentenced to more years than he otherwise would have received, had the district court been able to foresee a subsequent change in the parole practices of the federal prison authorities.
 
 
 72
 The narrow question before the Court in Addonizio was whether the "subjective intent of the sentencing judge" at the original sentencing was a sufficient ground for reopening Mayor Addonizio's sentence in order to make it shorter. The Supreme Court's discussion of that question bears quotation in full:
 
 
 73
 [I]n our judgment, there is no basis for enlarging the grounds for collateral attack to include claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge.
 
 
 74
 As a practical matter, the subjective intent of the sentencing judge would provide a questionable basis for testing the validity of his judgment.... If the record is ambiguous, and if a Sec. 2255 motion is not filed until years later, it will often be difficult to reconstruct with any certainty the subjective intent of the judge at the time of sentencing. Regular attempts to do so may well increase the risk of inconsistent treatment of defendants ....
 
 
 75
 442 U.S. at 187-88, 99 S.Ct. at 2241. We believe that the "subjective intent of the sentencing judge," so often referred to by the government in these en banc proceedings, "would provide a questionable basis" for altering (years later) any final judgment. In this very important respect, Addonizio is indistinguishable from the present case.[23]
 
 
 76
 The government asserts that the Second Circuit's McClain cases reach a different result. See McClain v. United States, 478 F.Supp. 732 (S.D.N.Y.1979), vacated, 643 F.2d 911 (2d Cir.), cert. denied, 452 U.S. 919, 101 S.Ct. 3057, 69 L.Ed.2d 424 (1981), on appeal from remand, 676 F.2d 915 (2d Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982). The McClain cases also arose under section 2255, but authorized an increase in a sentence that the defendant had not challenged and that had long before become final. None of the McClain cases discusses or even adverts to any of the historical, jurisdictional, or practical concerns that have occupied us in this rule 35 opinion. The McClain cases also do not discuss Addonizio and the principle of finality. We therefore think that insofar as the Second Circuit's McClain cases are inconsistent with the analysis presented in Addonizio, they are wrongly decided and should not be followed.
 
 
 77
 We believe that the analysis of finality vis-a-vis the sentencing intent of the trial judge presented in Addonizio is persuasive and--though that case is not precisely on point--applies in these rule 35 proceedings as well.
 
 
 78
 IV. DUE PROCESS AND RULE 35.
 
 
 79
 Because we are unable to find any authority, under any statute or under rule 35, for what the district court did here, we are able to and do reverse the district court's judgment without having to reach Henry's constitutional claims. We note those claims solely for the purpose of completeness. He first claims that his resentencing under section 111 violates the double jeopardy clause. That claim is discussed supra, text following note 16. He also claims that his resentencing under section 111 violates the due process clause as that clause was interpreted in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), a case decided almost a quarter century after rule 35 was originally promulgated.
 
 
 80
 The necessary predicate for a due process analysis under Pearce is an increased penalty that results from a defendant's successful challenge to his conviction or sentence. The government urges that due process concerns are not implicated here because Henry's rule 35 motion produced a reduction in his aggregate prison term from twelve years to ten. He did not receive the five-year benefit that he had anticipated, the government concedes, but he did receive some benefit. While superficially attractive, this argument cannot withstand close scrutiny because Henry's section 111 sentence was, in fact, increased. The due process prohibition against sentence increases under certain circumstances plainly applies to all kinds of increases, and most particularly to modifications that make consecutive sentences that had formerly been concurrent. See Barnes v. United States, 419 F.2d 753, 754 (D.C.Cir.1969) ("the change of th[is] sentence ... from concurrent to consecutive was error in violation of the due process clause"). Henry's originally concurrent sentence under section 111 (count II) was modified to run consecutively with his sentence under section 371 (count I) in response to his successful challenge to his sentence under section 924(c)(1) (count III). The district court's March 20, 1981, ruling in this case thus plainly calls into play the due process values first identified by the Supreme Court in North Carolina v. Pearce, supra.
 
 
 81
 Pearce and the five principal Supreme Court cases that have interpreted it[24] have established that although "the Due Process Clause is not offended by all possibilities of increased punishment upon re[sentencing] after appeal," it is offended by "those that pose a realistic likelihood of 'vindictiveness.' " Blackledge v. Perry, 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974). The rationale behind this rule is simple:
 
 
 82
 [S]ince the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process ... requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
 
 
 83
 United States v. Goodwin, 457 U.S. 368, ----, 102 S.Ct. 2485, 2489, 73 L.Ed.2d 74 (1982) (quoting Pearce, supra, 395 U.S. at 725, 89 S.Ct. at 2080). "Actual retaliatory motivation" need not exist so long as the situation produces a reasonable "fear of such vindictiveness" that would deter defendants from pursuing postconviction remedies. Blackledge, supra, 417 U.S. at 28, 94 S.Ct. at 2102.[25]
 
 
 84
 Henry has cited the various due process cases, and points in particular to the comment in Chaffin v. Stynchcombe, 412 U.S. 17, 26-27, 93 S.Ct. 1977, 1982, 36 L.Ed.2d 714 (1973), that a trial court has a "personal stake in the prior ... [sentence and thus] motivation to engage in self-vindication." See Reply Brief for Henry at 6. "The principal teaching of Pearce and its progeny," according to Henry, "is that our system should guard against vindictiveness, self-vindication, and the appearance of these factors so that the right[s] to appeal or [to petition for] collateral review are not impermissibly stifled." Id. at 7. He concludes that the government's proposed "compensatory sentencing scheme ... makes a successful appeal a mere mirage, and therefore has too great a chilling effect on the exercise of important procedural rights to pass constitutional muster" under the due process clause. Id.
 
 
 85
 While we need not and do not pass on the merits of Henry's due process argument, we recognize that it raises important questions. The Supreme Court has recently expressly acknowledged that a defendant has a legitimate "expectation of finality in his ["original"] sentence" after the various applicable time limitations for an appeal have expired. United States v. DiFrancesco, 449 U.S. 117, 136, 139, 101 S.Ct. 426, 437, 438, 66 L.Ed.2d 328 (1980) (referring by implication to the government's time to appeal under the "dangerous special offender" statute, 18 U.S.C. Secs. 3575-3576). As a general matter, moreover, the "United States 'has no right of appeal in a criminal case, absent explicit statutory authority.' " DiFrancesco, supra, 449 U.S. at 131, 101 S.Ct. at 434 (citation omitted). Because the government's proposed reading of rule 35 amounts to a request that we create out of whole cloth a right of cross-appeal that may be used to thwart defendants who successfully use the rule to challenge some illegal sentences, Henry's Pearce argument is not frivolous.[26]V. CONCLUSION.
 
 
 86
 There are, in sum, at least five separate and independent reasons why the district court could not increase the total period of imprisonment from seven to ten years on the two valid parts of Henry's three-part conviction.
 
 
 87
 First, the district court's adjustment to the sentence under section 111 (count II) violates the mandate of this court issued on March 19, 1976, pursuant to our opinion in James, supra, 528 F.2d at 999, and clearly exceeds the mandate of this court issued on August 8, 1980, pursuant to our en banc opinion in Henry, supra, 621 F.2d at 763. Second, rule 35 does nothing more than codify the existing law of 1946, which had not even the barest hint of any kind of power to change a valid sentence. The "power" to correct an illegal sentence at any time was not a power in the usual sense; rather, it was the simple duty to recognize that a sentence had been a nullity from the outset because of the court's want of statutory authority to impose it. Third, rule 35 codifies the double jeopardy rule in Ex parte Lange, which clearly prohibited any increase in a sentence once a defendant had begun to serve it. DiFrancesco may indeed have overruled Ex parte Lange, although that is far from clear; nevertheless, Ex parte Lange must be followed in every rule 35 case until the rule is amended. Fourth, the text of rule 35 simply does not support the reading that the government wants us to adopt. Under rule 35(a), we can vacate only an "illegal sentence." Henry's sentence under section 111 is patently legal. Under rule 35(b), we can reduce a sentence only within 120 days after the sentence is imposed or the mandate issued on direct appeal. If the district court did reduce Henry's section 111 sentence, it did so well beyond the time period authorized by rule 35(b). If the district court increased Henry's section 111 sentence, it did so in contravention of the implicit prohibition in rule 35(b). And fifth, the government's proposed reading of the rule is fundamentally inconsistent with Addonizio's analysis of finality vis-a-vis the "subjective intent of the sentencing judge."
 
 
 88
 Until Congress or the Supreme Court rewrites rule 35, we may not. The orders of the district court are therefore VACATED and the cases are REMANDED for proceedings consistent with this opinion.
 
 REAVLEY, Circuit Judge, specially concurring:
 
 89
 I concur in the judgment. In Henry's case, for example, we must vacate the district court's judgment dated March 20, 1981, insofar as it changed the sentence on count two, and then remand to that court to restore the legal sentence as it stood prior to March 7, 1979. This is because the district court could do no more at that point than correct the illegality. Whether "sentence" applies to the whole or only to an individual count, there was nothing about counts one or two that was illegal or required to be corrected in order that some intertwined illegality could be eliminated. To "correct an illegal sentence" was the limit of the district court's authority under Rule 35(a), and the court of appeals could not add to that authority. By our mandate we could not enlarge it any more than we could rewrite the rule. I have no qualms about fairness or double jeopardy; these cases are resolved by the plain language of Rule 35.
 
 
 90
 E. GRADY JOLLY, Circuit Judge, specially concurring:
 
 
 91
 I concur with the majority. My reasons, I believe, can be stated quickly. First, the result of Henry's appeal was to reverse and set aside his conviction on the Sec. 924 count, but on that count alone. It did not affect or touch upon, even indirectly, the legal validity of the remaining counts. Thus, when his conviction fell, the sentence dependent upon that conviction fell also; with no supporting conviction there can be no remaining sentence. The court had no more right or power to resentence Henry than if on direct appeal his conviction on the subject count had been reversed and remanded for evidentiary error. Of course, no one contends that in such a situation, the court, as an alternative to retrial, conviction and sentencing on the reversed count, could simply reshuffle the sentence on the remaining valid counts to effect the same (or even a slightly lesser) sentence which had been given before appeal. Similarly, the defendant here won a reversal on one of the counts with which he was charged, but part of the sentence on the fallen count was reimposed "summarily" and remained to be served (a reasonable interpretation and application of our remand by the district court, I should say). This result, while not vindictiveness in my opinion, certainly impinges on the image of fairness.
 
 
 92
 Second, double jeopardy may attach in resentencing if the consequence of the resentencing is to continue in effect, if only partially, the sentence on a count upon which there has been an acquittal or reversal. Double jeopardy therefore attaches to the resentence here. However, this is not to say that a timely upward resentence for which there is a valid supporting conviction necessarily violates double jeopardy rights.
 
 
 93
 Third, Rule 35(a) by its specific terms and its history applies to correct only an illegal sentence. The only illegal sentence here related to the Sec. 924 count. This is true because the sentences here were not in fact, and cannot be considered for the purposes of our decision here, a general sentence. They were not in fact because the district judge sentenced very carefully and specifically on each individual count. They cannot be considered a general sentence by us for purposes of Rule 35, because our court in Benson v. United States, 332 F.2d 288 (5th Cir.1964), for better or for worse, has outlawed such an approach to sentence consideration. All other sentences meted out to Henry being legal sentences, only the Sec. 924 sentence was subject to any change by the district court under Rule 35. This case is unlike United States v. Hodges, 628 F.2d 350 (5th Cir.1980) and United States v. McDaniel, 550 F.2d 214 (5th Cir.1977), where neither of the two individual sentences was illegal, but only when considered together became illegal. The illegal sentence in each of these cases was the combination of the sentences, each of which was supported by valid counts on which convictions had been upheld and which convictions were in force at time of resentence. As far as Johnson v. United States, 619 F.2d 366 (5th Cir.1980) is concerned, it is overruled at least implicitly by the majority opinion. Rule 35(a) makes no distinction between a reduction or increase of the sentence under question; only an illegal sentence can be corrected under Rule 35(a).
 
 
 94
 I conclude by saying that if the two sentences under Secs. 924 and 111 respectively could have been considered illegal in combination, rather than as one distinctly legal sentence and one distinctly illegal sentence, or if a general sentence had been given by the district court, the conclusion I have reached would be different.
 
 
 95
 I only concur in the majority opinion to the extent necessary to support the specific reasons set forth in this concurrence.
 
 
 96
 GEE, Circuit Judge, with whom CLARK, Chief Judge, and BROWN, JOHNSON, GARWOOD and HIGGINBOTHAM, Circuit Judges, join, dissenting:
 
 
 97
 The issue in this case is simply stated. It is whether, on remand after the invalidation of one increment of an overall sentence, the district court can impose a new sentence on the remaining counts, tailored--as was the first--to the gravity of the offense and the character of the offender, or whether the remains of Henry's former sentence, mutilated by the severance of one of their members and bearing no necessary correspondence to either crime or criminal, must stand, a silent trophy to the sporting theory of justice. That the latter result, which Henry understandably champions, is repugnant to any rational system of criminal punishment is palpable. Nevertheless, he maintains, his procedural maneuvers have defeated the imposition of any rational sentencing plan and, entangled by them, we can only acquiesce. A majority of the court agrees with Henry, though only as to result.* In our view, if we can avoid such a result in a principled manner, we should.[1] Let us briefly restate the facts and history of Henry's case and then examine his arguments.
 
 Facts and Procedural History
 
 98
 In 1971 Henry, the President of a purported "Republic of New Africa" (RNA) claiming Jackson, Mississippi as its "capital," led several of its members in armed resistance to an attempt by state and federal officers to execute four arrest warrants. In consequence, one officer was killed and two others severely wounded by rifle and automatic weapons fire. Henry was charged with and convicted of several Title 18 offenses arising out of the single incident: conspiracy to assault federal officers (Sec. 371); using dangerous weapons in the assault (Sec. 111); and using a firearm to commit a felony (Sec. 924(c)(1)). He was sentenced to serve five years on the conspiracy charge, seven years concurrent for the assault, and five years consecutive to the first two sentences on the felony firearms charge--an overall twelve years. We affirmed his convictions, 528 F.2d 999, certiorari was denied, 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326, and in December of 1976 he began to serve his term of years.
 
 
 99
 With 1978, however, came new developments in the law that brought Henry back to court. In Simpson v. United States, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), the Court determined on non-constitutional grounds that, in a prosecution arising out of a single bank robbery with firearms, one could not be sentenced under both the specific firearms enhancement section of the bank robbery statute, 18 U.S.C. Sec. 2113(d), and the general felony firearms enhancement statute, 18 U.S.C. Sec. 924(c)(1). Armed with Simpson, Henry directed a Rule 35 motion at the Sec. 924(c)(1) increment of his sentence only. In the meantime, we decided United States v. Shillingford, 586 F.2d 372 (5th Cir.1978), a Rule 35 case similar to Henry's, arising from the same incidents involving the RNA. Noting that such motions are deemed made in the original case, so that whether the change of law worked by Simpson was retroactive or not did not signify, we held that by the Simpson rationale Shillingford could not be sentenced under both Section 111 and Section 924(c) for his participation in the RNA firefight. So holding, we remanded, instructing the district court to vacate one or the other of Shillingford's sentences and to resentence him consistent with our opinion.[2]
 
 
 100
 While the law of our circuit was in this posture, the district court decided Henry's Rule 35 motion, choosing to vacate the Section 111 increment of his overall sentence and leave standing the Section 371 and 924(c)(1) components, leaving him a reduced aggregate of ten years to serve. Bound by Shillingford, a panel of our court affirmed, 611 F.2d 983, and we took Henry's appeal en banc. While it awaited submission there, the Supreme Court decided Busic v. United States, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980).
 
 
 101
 In Busic the Court squarely held, again on exclusively statutory grounds, that the general firearms enhancement statute, Section 924(c), was not meant by Congress to apply to felonies covered by Section 111, thus vindicating the view of the Shillingford dissent. See note 2, supra. In a footnote significant for our present purposes, the Court posed the question that concerns us today:
 
 
 102
 The Government makes a conditional plea that should we find Sec. 924(c) to be inapplicable to these petitioners we vacate not only the Sec. 924(c) sentences, but also those imposed by the District Court under Sec. 111. This, the Government urges, would permit that court to resentence petitioners under the enhancement provision of the latter statute. The argument is that the District Court intended to deal severely with the assaults in question and should not be prevented from doing so by its choice of the incorrect enhancement provision. The Court of Appeals has not considered this contention in this context and we are reluctant to do so without the benefit of that court's views. Accordingly, we express no opinion as to whether in the particular circumstances of this case such a disposition would be permissible.
 
 
 103
 446 U.S. at 412 n. 19, 100 S.Ct. at 1756 n. 19.
 
 
 104
 It being apparent in light of Busic that the district court had erred in vacating the Section 111 increment of Henry's sentence and retaining that imposed under Section 924(c)(1), we returned the case to that court for further proceedings by a unanimous per curiam order.[3] On that remand, the district court rendered the judgment now before us. In it, the court persisted in the revised ten-year resentencing plan that it followed after the first appeal, vacating the Section 924(c)(1) sentence and reinstating the seven-year Section 111 sentence, but reducing the latter to five years. Next, it ordered the reduced Section 111 sentence to run consecutively, rather than concurrently as before, with the Section 371 sentence, thus making up a ten-year term. The court believed itself empowered to take this action despite its construction of our remand order as vacating only the Section 924(c)(1) sentence. Henry appealed again.
 
 
 105
 Perhaps thinking discretion the better part of valor, his counsel made no complaint of the trial court's reinstating Henry's Section 111 sentence, an action subject--at least in principle--to many of the same objections that he raises today. The spectacle of Henry's picking off elements of his sentence one by one, so as to reduce his term to something approximating time served, may have seemed to Henry's counsel an unfortunate one. For whatever reasons, his main contention was that the trial court had been rendered, by Henry's maneuvers, impotent to impose a rational sentencing plan. Since the seven-year Section 111 sentence was legal and since he had never attacked it, Henry contended that the trial court could do no more than reinstate it to be served as concurrent with his Section 371 sentence, leaving him with a total of seven years to serve, most of which have passed. A panel of our court, concluding that if one portion of an overall sentence was illegal then all might properly be seen as such, rejected this contention and upheld the power of the trial court to follow its discretion in imposing a rational sentencing plan appropriate to offender and offense and free of technical trammels interposed by Henry's procedural maneuvers. United States v. Henry, 680 F.2d 403 (5th Cir.1982). Today's en banc majority, unrestrained by precedent except from above, rejects the panel's conclusions and remits Henry to a sentence that is the product of no rational consideration by any court--either of him or of his offense. Respectfully disagreeing, we dissent.
 
 
 106
 Before explaining why we do so, we think it proper to observe that nothing has appeared in the long course of proceedings since Henry's conviction and original twelve-year overall sentence to change anything whatever about Henry's offense or about Henry.[4] No extraneous offense has been found not proved, no police officer has come back to life, and the aggregate sentence on the subsisting valid counts remains well within what might have been initially imposed on these two remaining counts alone. All that has changed since Henry was convicted and sentenced is the law about which particular weapons-enhancement statute could validly be applied to Henry. Today he escapes condign punishment, being made by the majority, though no less guilty and no less a criminal than before, the beneficiary of "a legal accident." See Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 485, 1 L.Ed.2d 393 (1957). Even so, in embarking on our analysis, we bear carefully in mind the principle competing with our general observations thus far: that our system is one of prior --not ex post facto--laws, that such systems are necessarily subject to manipulations exploiting their existing structural deficiencies, and that the importance of maintaining their integrity as prior laws far transcends any result in a given case. In sum, the outcome of Henry's appeal comes down to whether a result that could be thought desirable by no one (except Henry) is compelled by legal edicts and decisions laid down without pre-vision of their effects in Henry's case, or whether justice can be done in the case before us. The majority determines that it cannot.
 
 What the District Court Did
 
 107
 Before evaluating Henry's objections to the trial court's resentencing action, we pause briefly to analyze exactly what that court did. As necessitated by the Supreme Court's decision in Busic v. United States, supra, we had returned the case to the trial judge by a mandate reading, in pertinent part: "the sentence ... in this cause is hereby vacated ... [and] this cause ... is remanded to the District Court for further proceedings consistent with [Busic ]." Concluding, it may perhaps be assumed, that we must have meant him to exercise the sentencing discretion that he alone possessed--we were as capable as he merely to vacate the Section 924(c)(1) sentence and reinstate the existing Section 111 one--he proceeded to do so.
 
 
 108
 Henry's convictions on two counts arising from the RNA firefight remained valid. On one (18 U.S.C. Sec. 371), the maximum penalty was five years and a $10,000 fine; on the other (18 U.S.C. Sec. 111), it was ten years and such a fine. The ten-year maximum penalty provided by Section 924(c)(1) was no longer available as a basis for the court's sentencing plan. At the original sentencing, when the trial judge had believed the total sentence could have been as much as 25 years, he had imposed an overall sentence of twelve. At the first resentencing, when he had believed that either the ten-year penalty of Section 924(c)(1) or the identical ten-year penalty of Section 111 was available as a sentencing basis, he had imposed an overall sentence of ten years. Unfortunately and understandably misled by the status of our law, he picked the wrong ten-year penalty to travel on--that under the Section 924(c)(1) conviction. At the second resentencing, directed to consider Busic and aware that Section 924(c)(1) was not available, he simply persisted in his revised sentencing plan. So doing, he imposed the same aggregate ten-year sentence that he had concluded was merited by offense and offender after he had learned from Simpson and Shillingford that only two counts, not three, could form its basis.
 
 
 109
 For three reasons Henry contends, and the plurality opinion agrees, that he was forbidden to do so: trammels imposed on him by our earlier mandate, general constitutional considerations of due process and double jeopardy, and limitations arising from Henry's procedural maneuvers and the terms of Rule 35, Federal Rules of Criminal Procedure. We discuss each in turn.
 
 
 110
 Violation of Our Mandates?
 
 
 111
 Henry's first contention is one peculiar to present circumstances: that the district court's correction of his Section 111 sentence violated our 1980 en banc mandate: "the sentence ... in this cause is hereby vacated ... [and] this cause ... is remanded to the District Court for further proceedings consistent with [Busic ]" (emphasis added). He asserts that the district court correctly construed our mandate as vacating only the Section 924(c) count--since he had complained of no other--and that in undertaking to revise his sentence on valid counts that court violated both our then current mandate and the earlier 1976 mandate affirming the Section 111 count. We are not persuaded.
 
 
 112
 In the first place, his reading of the 1980 mandate as directing the district court merely to reinstate (or acknowledge the continuing validity of) the Section 111 sentence makes the remand a useless act. Although the en banc court clearly had power merely to vacate the Section 924(c) count and reinstate the Section 111 sentence, e.g. United States v. Vasquez, 504 F.2d 555 (5th Cir.1974); United States v. Buckley, 586 F.2d 498 (5th Cir.1978), cert. denied 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979), we chose instead to remand for some action in light of Busic.
 
 
 113
 What action? Contrary to the plurality's suggestion, Busic does not "compel" a reading of the mandate as touching only the Section 924 sentence; if anything, it compels the opposite. Since Busic recognized the possibility of resentencing on all counts after one count had been held invalid, 446 U.S. at 412 n. 19, 100 S.Ct. at 1756 n. 19, the fairest reading of our direction to act consistent with Busic is that it meant the district court to do just that. This reading takes into account that sentencing requires an exercise of district court discretion, see, e.g., United States v. Frontero, 452 F.2d 406, 409-10 (5th Cir.1971), hence a remand is required for resentencing but is not necessary merely to "lop off" an invalid sentence. United States v. Vasquez, 504 F.2d at 556.
 
 
 114
 Kitt v. United States, 138 F.2d 842 (4th Cir.1943) (cited with approval in McClain v. United States, 643 F.2d 911, 914 (2d Cir.), cert. denied, 452 U.S. 919, 101 S.Ct. 3057, 69 L.Ed.2d 424 (1981)), supports this construction of the mandate. On direct appeal, the Court of Appeals reversed one count, held that portions of sentences on other valid counts were excessive, and remanded for resentencing. On remand the district court reduced the sentences to valid lengths, but changed them to run consecutively, so that the total sentence was the same as that originally imposed. Again on appeal, the Fourth Circuit construed its earlier mandate to vacate the entire sentence because a remand merely to strike the illegal portions of it would have been a "foolish gesture." 138 F.2d at 843.[5] Thus, a construction of our mandate as vacating all components of the sentence seems the more logical one of the two, and by logic, moreover, that has found acceptance in the construction of similar mandates by other circuits.[6]
 
 
 115
 A second possible reply to this contention is that, in vacating only one of an interdependent congeries of sentences arising from a single criminal act, we necessarily must have intended to invalidate all and permit the trial court to devise and apply a rational sentencing plan, since leaving only the relics of an earlier plan in effect produces a purely fortuitous and haphazard result--a "legal accident." Pollard, supra.
 
 
 116
 On balance, since we conclude that our earlier mandate should be construed as intended neither to dictate an irrational result on remand nor to constitute a foolish and useless gesture, we would adopt that construction. It is, however, another question whether we had power to do as we did, vacating valid incremental sentences that Henry had not attacked. We are statutorily empowered to vacate any "judgment, decree or order of a court lawfully brought before [us] for review." 28 U.S.C. Sec. 2106 (1976). In distinguishing Busic, where the defendant directly appealed from his entire judgment, from Henry, where his Rule 35 motion attacked only the Section 924(c) sentence, the plurality opinion suggests that the en banc court had no power over the Section 111 sentence because it was not "lawfully brought before [us]" by his Rule 35 motion directed only at the Section 924(c) count.[7] Thus, the crucial question upon which our appellate powers under Section 2106 and the district court's original jurisdiction under Rule 35 both depend is whether Rule 35 contemplates correction of "the sentence" as a whole, or of its component parts only. Before turning to that question, however, we consider Henry's constitutional claims.
 
 Due Process and Double Jeopardy
 
 117
 Henry contends that the "increase" in his sentence on the second remand violates his rights to due process and constitutes double jeopardy. We need not quibble with Henry's assertion that there has indeed been an increase[8] in his "sentence," though we note the irony in his contending here for a definition of the word at complete variance with that on which he insists in his Rule 35 arguments. Of course there has been an increase, in the only sense of the word "sentence" that can matter much to Henry: because of the trial court's action he had ten years to serve rather than only seven.
 
 
 118
 Had Henry's due process and double jeopardy contentions been advanced fifteen years ago, they would have presented serious issues requiring extended analysis and discussion. Even today, when we think the march of Supreme Court authority has overrun them, they are not shortly answered.
 
 
 119
 Except in one possible respect, discussed at unfortunate but necessary length by us below, Henry's due process claim is foreclosed by North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Pearce, convicted of assault to rape, had received a twelve to fifteen year sentence. After entering on the service of that sentence, he mounted a successful collateral attack on his first conviction. At retrial, he was again convicted and received, in the language of the Supreme Court, a "longer total sentence."[9] The federal district court granted habeas relief upon the authority of a then recent Fourth Circuit decision, Patton v. North Carolina, 381 F.2d 636 (4th Cir.1967), cert. denied, 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871 (1968), and held the longer sentence imposed upon retrial "unconstitutional and void." See 395 U.S. at 713, 89 S.Ct. at 2074. The Fourth Circuit affirmed in a brief per curiam which noted only the fact that Pearce was sentenced to a longer term after his successful post-conviction attack and cited Patton. Pearce v. North Carolina, 397 F.2d 253, 254 (4th Cir.1968). It is therefore to the opinion in Patton that we must look for the reasoning of the Court of Appeals that was subsequently rejected by the Supreme Court.
 
 
 120
 In that opinion, the circuit court first carefully noted that any contention that Patton's increased sentence "was motivated by prejudice [on the part of the second sentencing judge] because of the defendant's successful attack on the initial conviction" had not been exhausted. 381 F.2d at 637. It then went on to hold squarely, on due process grounds, that regardless of what motivated the longer sentence--even if it was based on new facts introduced at the second trial--in no circumstances could such a more severe sentence be imposed. As to double jeopardy, it distinguished the Supreme Court decision in Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), discussed below, and relied on that in Ex Parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874), and on dicta in United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931). See 381 F.2d at 643-45. According to its reasoning, Lange and Benz establish the proposition that the aspect of double jeopardy forbidding multiple punishment for one offense "prohibit[s] an increase in a defendant's sentence, once service has commenced." 381 F.2d at 645. It therefore affirmed the grant of habeas corpus on both due process and double jeopardy grounds, adding equal protection for good measure.[10]
 
 
 121
 The Supreme Court granted certiorari and reversed this reasoning across the board. United States v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In its discussion of Pearce's double jeopardy contention, to which we shall have further reference below, the Court rejected the circuit court's attempted distinguishment of Stroud in clear terms:
 
 
 122
 And at least since 1919, when Stroud v. United States, 251 U.S. 15, 64 L.Ed. 103, 40 S.Ct. 50, was decided, it has been settled that a corollary of the power to retry a defendant is the power, upon the defendant's reconviction, to impose whatever sentence may be legally authorized, whether or not it is greater than the sentence imposed after the first conviction.
 
 
 123
 395 U.S. at 720, 89 S.Ct. at 2078 (footnote omitted). Noting that whether "a defendant's conviction is overturned on collateral rather than direct attack is irrelevant for these purposes,"[11] and referring to the modern penological view that the punishment should fit both offender and offense,[12] the Court held that "there exists no absolute constitutional bar to the imposition of a more severe sentence upon retrial." 395 U.S. at 723, 89 S.Ct. at 2079. So holding, however, it added that according due process most emphatically does require that vindictiveness against a defendant for having successfully attacked his first conviction play no part in any new sentence, lest his apprehension of retaliation deter him from exercising his right to appeal or collaterally attack his first conviction. Id. at 725, 89 S.Ct. at 2080.
 
 
 124
 The Court then added a qualification that renders us unable to conclude without further analysis that Pearce forecloses Henry's due process attack upon his resentence. This took the form of a prophylactic rule, one doubtless akin to the exclusionary rule in forming no part of the Constitution but being designed to enforce rights found there:
 
 
 125
 In order to assure the absence of such a [vindictive] motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.
 
 
 126
 Id. at 726, 89 S.Ct. at 2081. In the nature of things, the district court did not base Henry's increased sentence on such information. If Pearce demands that, then here is an end of the matter; Henry prevails. We do not think it does.
 
 
 127
 Instead, we think what Pearce demands is a clear showing that vindictiveness bore no part in the resentence, demonstrated by reasons stated in the record. And our conclusion is fortified by the Court's concluding observation in Pearce, voiced after laying down the rule quoted above, that "neither at the time the increased sentence was imposed upon Pearce, nor at any stage in this habeas corpus proceeding, has the State offered any reason or justification " for the increased sentence. Id. at 726, 89 S.Ct. at 2081 (emphasis added).
 
 
 128
 Here such reasons do appear in the record. In his resentencing opinion, the trial judge stated:
 
 
 129
 We concede that by making this five year sentence run consecutively to the five year sentence imposed on Count One, the total sentence that the defendant will be required to serve under Counts One and Two will be ten years rather than seven originally imposed by this Court on those two counts by ordering the seven year Count Two sentence to run concurrently with the Count One five year sentence. However, this Court determined the gravity of the offense in question by also imposing a five year consecutive sentence for violation of Count Three, which was legally incorrect, although the Courts had not spoken to that question at that time. This Court feels that inasmuch as it determined the gravity of the offense in question to warrant the twelve year sentence originally imposed upon this defendant, to require him to serve a ten year sentence, in view of the fact that we were required to vacate his Count Three sentence, does not violate the double jeopardy clause, nor does it result in any inequity or unfairness and certainly does not exceed the maximum sentence prescribed by the Congress.
 
 
 130
 We think the judge's stated reason for increasing Henry's sentence an adequate one. As we have noted above, in Busic v. United States, 446 U.S. 398, 411 n. 19, 100 S.Ct. 1747, 1756 n. 19, 64 L.Ed.2d 381 (1980), the Supreme Court left the identical question open, noting the Government's contention that "the District Court intended to deal severely with the assaults in question and should not be prevented from doing so by its choice of the incorrect enhancement provision" and declining to address it without benefit of the views of the Court of Appeals. Had the Supreme Court, speaking long after Pearce, believed that such a purpose on the part of the trial judge was intrinsically improper, surely it would have said so, rather than remitting the parties and the courts below to a futile and foredoomed process. And when the Court of Appeals held that Busic's sentence could be increased, and for the very reason given, United States v. Busic, 639 F.2d 940 (3d Cir.1981), the Supreme Court declined to intervene. 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981) (denying certiorari). Since the trial judge's stated reasons rule out vindictiveness as a motive in his resentence, we think that Pearce and due process are satisfied.[13] So concluding, we turn to Henry's double jeopardy claim.
 
 
 131
 The issues raised by this contention have, like those of Henry's due process contention, also been rendered simpler by modern decisions of the Supreme Court. Prior to the Court's decisions in United States v. Pearce, supra, and United States v. Di Francesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), of which more later, the multiple punishment aspect of double jeopardy was generally perceived as controlled by Ex Parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874). Lange, in turn, was uncritically accepted as standing for the proposition that the original sentence in a case, as pronounced, was to be treated in the same manner as an acquittal, so that for finality purposes of double jeopardy the imposition of a given sentence constituted an "implied acquittal" of any greater one. See, e.g., Patton v. North Carolina, 381 F.2d 636 (4th Cir.1967) (alternate ground; discussed above), cert. denied, 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871 (1968); Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L.J. 606, 634-35 (1965). Indeed the Supreme Court itself had lent fuel to the flames. United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931), contains broad dicta, purportedly based on Lange, suggesting that the Constitution forbids a federal court to increase any sentence once a defendant has begun to serve it. Certainly we, along with other Courts of Appeals, accepted these propositions. In Chandler v. United States, 468 F.2d 834 (5th Cir.1972), citing Lange and numerous authorities from other circuits, we laid it down that:
 
 
 132
 The double jeopardy provision of the Constitution is designed to protect an individual from being retried for the same criminal acts. It is well established that this safeguard is not limited to the retrial of the question of guilt, but also protects against resentencing for the same offense. "For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict." Ex Parte Lange, 1873, 18 Wall. 163, 173, 85 U.S. 163, 21 L.Ed. 872.... Here, [like Henry,] petitioner only challenged the sentence on count one. The three year sentence on count two was within the statutory maximum and was unchallenged by petitioner. The upward modification of that sentence was undertaken sua sponte by the district court.
 
 
 133
 468 F.2d at 835-36 (emphasis added). So holding, we vacated that modification as working double jeopardy. With the handing down of Pearce and Di Francesco, however, we think it became apparent that the law (and the Constitution) were not as we had thought in Chandler, but otherwise.
 
 
 134
 In Pearce, as we have noted, the Court held squarely that where an initial sentence is overturned, whether on appeal or by collateral attack, on retrial and conviction the trial judge--absent vindictiveness--is constitutionally empowered "to impose whatever sentence may be legally authorized, whether or not it is greater than the sentence imposed after the first conviction."[14]
 
 
 135
 Further clarification came with Di Francesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), in which the Court explained its holding in Ex Parte Lange and confined its Benz dicta to that narrow context. 449 U.S. at 138-9, 101 S.Ct. at 438. The Organized Crime Control Act authorized an appeal by the Government of sentences imposed on "dangerous special offenders." 18 U.S.C. Secs. 3575(e) & (f), 3576 (1976). Di Francesco, a racketeer with a lengthy criminal record comprising convictions for murder, arson, bombings and loan-sharking, received two such concurrent ten-year sentences for racketeering offenses, themselves to run concurrently with an unrelated nine-year sentence imposed on him just the month before. The United States appealed, contending that the district judge abused his discretion in imposing what was, in practical effect, a one-year sentence for the later multiple convictions. Citing Ex Parte Lange and the Benz dicta, the Court of Appeals held that the double jeopardy clause barred an increase in Di Francesco's sentences. United States v. Di Francesco, 604 F.2d 769, 784-87 (2d Cir.1979). In the course of so doing, that court distinguished Pearce on the ground, with another, that unlike Pearce, Di Francesco had not sought a retrial, the consequence of which might have been an increased sentence. Id. at 785-86. Again, as in Pearce, the Supreme Court granted certiorari and reversed.
 
 
 136
 Its opinion emphasizes the distinction for double jeopardy purposes between acquittals and sentences, holding flatly that "the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its increase." 449 U.S. at 137, 101 S.Ct. at 437.[15] Turning to the question whether the increase of a sentence once imposed constitutes multiple punishment violating that Clause, and to the Court of Appeals' conclusion that it does, the Court spoke in terms that demolish the plurality's arguments (e.g. Typescript op. at 25-27) based on Lange and the Benz dicta:
 
 
 137
 We turn to the question whether the increase of a sentence on review under Sec. 3576 constitutes multiple punishment in violation of the Double Jeopardy Clause. The Court of Appeals found that it did. 604 F.2d, at 784-787. This conclusion appears to be attributable primarily to that court's extending to an appeal this Court's dictum in United States v. Benz, 282 U.S. 304, 307, 75 L.Ed. 354, 51 S.Ct. 113, 114 (1931), to the effect that the federal practice of barring an increase in sentence by the trial court after service of the sentence has begun is constitutionally based. The real and only issue in Benz, however, was whether the trial judge had the power to reduce a defendant's sentence after service had begun. The Court held that the trial court had such power. It went on to say gratuitously, however, id., at 307-308, 75 L.Ed. 354, 51 S.Ct. 113, and with quotations from a textbook and from Ex parte Lange, 18 Wall., at 167, 173, 21 L.Ed. 872, that the trial court may not increase a sentence, even though the increase is effectuated during the same court session, if the defendant has begun service of his sentence. But the dictum's source, Ex parte Lange, states no such principle. In Lange the trial court erroneously imposed both imprisonment and fine, even though it was authorized by statute to impose only one or the other of these two punishments. Lange had paid the fine and served five days in prison. The trial court then resentenced him to a year's imprisonment. The fine having been paid and the defendant having suffered one of the alternative punishments, "the power of the court to punish further was gone." Id., at 176, 21 L.Ed. 872. The Court also observed that to impose a year's imprisonment (the maximum) after five days had been served was to punish twice for the same offense. Id., at 175, 21 L.Ed. 872. The holding in Lange, and thus the dictum in Benz, are not susceptible of general application. We confine the dictum in Benz to Lange 's specific context.
 
 
 138
 449 U.S. at 138-39, 101 S.Ct. at 438 (emphasis original; footnote omitted).
 
 
 139
 What "specific context"? We see no reasonable alternative--given the Court's observation quoted above that in Lange, the defendant "having suffered one of ... alternative punishments," id.,[16] the power of the trial court to punish him further was gone--to concluding that the curious and mechanical rule, erroneously derived from Lange, that a sentence becomes inviolate once service of it commences has been disavowed. In so doing, we concur in the observations of the Third Circuit, writing on remand in Busic, that
 
 
 140
 There is no double jeopardy objection to altering the sentence even after service of a sentence has begun. Those courts who believed that commencement of the service of the sentence restricted the trial court's power to correct or amend a sentence have relied on a dictum in United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1930), that a sentence may not be amended to increase the punishment because it subjects the defendant to double punishment for the same offense. Id. at 307, 51 S.Ct. at 114. The Court in Benz, however, erroneously predicated its dictum on Ex Parte Lange, 85 U.S. 163, 21 L.Ed. 872 (1874), which involved a full satisfaction of the defendant's sentence, not merely a commencement of the service of his sentence.
 
 
 141
 United States v. Busic, 639 F.2d 940, 948 n. 11 (3d Cir.) (emphasis original), cert. denied, 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981).
 
 
 142
 We are fortified in our rejection of "the now discredited decisions in Ex Parte Lange ... and United States v. Benz "[17] by several observations of the Supreme Court in Di Francesco. None of these, we concede, approaches the dispositive. All, however, point in the same direction--toward a rational, not a mechanical, application of the Double Jeopardy Clause to resentencing proceedings.[18] Also significant is the very recent decision in Missouri v. Hunter, --- U.S. ----, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), where the Court, rejecting a multiple-punishment claim, observed, "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does not more than prevent the sentencing court from prescribing greater punishment than the legislature intended." 103 S.Ct. at 678, 74 L.Ed.2d at 542.
 
 
 143
 We have discussed Henry's constitutional contentions at length--greater length, perhaps, than they merit. For the reasons given, we would reject them. We turn now to Henry's final contention.
 
 Rule 35
 
 144
 Rule 35 provides in relevant part that "[t]he court may correct an illegal sentence at any time (emphasis added)." As we have already observed, the crucial question in this case is whether the power to correct an "illegal sentence" is power to correct the entire sentence or only its component parts. If the entire sentencing plan is rendered illegal by its incorporation of an invalid component, then Henry's Rule 35 motion brought the entire sentence before the district court, so that both that court and we had power to act to preserve a rational plan.
 
 
 145
 The major argument of the plurality is that the history of Rule 35 shows that it was intended to codify existing law, which was that a sentence is only illegal to the extent that portions of it are successfully attacked. We will discuss the plurality's version of pre-Rule 35 law presently. First, we take issue with its interpretation of Rule 35's history.
 
 
 146
 The plurality's entire argument proceeds from, and depends upon, its interpretation of one sentence in the notes of the Advisory Committee that drafted Rule 35 in 1946. The Advisory Committee stated, without further elaboration,[19] that Rule 35's provision that an illegal sentence may be corrected at any time "continues existing law." Advisory Committee Note to Rule 35, reprinted in 18 U.S.C. app. at 1461 (1976).
 
 
 147
 From the Committee's simple acknowledgement of the common law origin of Rule 35, the plurality opinion derives a startling proposition: that if, in 1946, there was no common law power for the district court to do what it did in his case, then there can be none today under Rule 35. Put simply, the claim is that Rule 35 "froze" for all time the law governing sentence correction as developed by the courts prior to 1946, until the words of the Rule itself are rewritten by the Supreme Court.[20]
 
 
 148
 This novel theory is not supported by the plain meaning of the Advisory Committee's remark, and, not surprisingly, the plurality directs us to no other authority supporting such a restrictive treatment of one of the Federal Rules. A fair reading of the Committee note is that it served to identify the source of the Rule, the pre-Rule caselaw, and perhaps to explain what the Rule meant at the time of its adoption. However, it must be borne in mind that Rule 35, like the other Federal Rules and the decisions of the federal courts, is a judge-made rule promulgated pursuant to statutory authority.20a What the plurality ignores is that, like all such judicial rules, its content is subject to continuing development through interpretation in the context of changing conditions.
 
 
 149
 That conditions have changed significantly since 1946, when Rule 35 was adopted, has already been explained. Between 1874, when it was handed down, and 1946, Ex Parte Lange held sway, and courts undoubtedly believed the Constitution denied them the power to do what the district court has done in Henry's case. See, e.g., Miller v. United States, 147 F.2d 372, 373 and n. 5 (2d Cir.1945) (suggesting double jeopardy precludes remand for resentencing); 5 G. Longsdorf, Cyclopedia of Federal Procedure Sec. 2468, at 783 & nn. 66-69 (1929); see also United States v. Benz, 282 U.S. 304, 307, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1931). We do not believe that after Di Francesco the Constitution can still be interpreted in this fashion.
 
 
 150
 In order to obtain its result, however, the plurality is forced to maintain that in 1946 Rule 35 froze the law in place. The Supreme Court may be surprised to learn that its recent pronouncements on the constitutional limits of the sentencing power may not be implemented in cases brought under Rule 35, one of the primary vehicles for the exercise of that power, and that the meaning of Rule 35 must remain static until the Court revises the words of the Rule itself. This proposition, we think, ignores the Rule's status as a judge-made one and hampers the ability of federal courts to implement a rational development of the law. Even the Constitution, though seldom amended, has undergone such development.
 
 
 151
 That the history of Rule 35 does not require such a result is borne out by the history of another Federal Rule of Criminal Procedure--Rule 11. Just as had been stated in regard to Rule 35, the Advisory Committee noted that Rule 11 was "substantially a restatement of existing law and practice." Advisory Committee Note to Rule 11, reprinted in 18 U.S.C. app. at 1417 (1976).[21] Even so, the requirements of Rule 11 have undergone substantial development since its adoption. Some of that development is traced in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).
 
 
 152
 Rule 11 was designed to assure that a guilty plea would not be accepted unless the plea is voluntary and the defendant understands the nature of the charge against him and the consequences of his plea. Before McCarthy, whenever a trial judge had failed to ascertain these facts, the defendant's remedy was a factual hearing at which the burden was on the Government to demonstrate the required facts based on the record. McCarthy, 89 S.Ct. at 1172 & nn. 22 & 23, 22 L.Ed.2d at 426-27 & nn. 22 & 23 (collecting cases); 1 C. Wright, Federal Practice & Procedure: Criminal Sec. 178, at 674 (2d ed. 1982). This remedy was a continuation of pre-Rule 11 law: when a defendant attacked the voluntariness of his guilty plea, the court would review the record to determine if a factual basis for his claim existed. See, e.g. United States v. Denniston, 89 F.2d 696, 698 (2d Cir.) (Chase, J.), cert. denied, 301 U.S. 709, 57 S.Ct. 943, 81 L.Ed. 1362 (1937). Not long before McCarthy, the Ninth Circuit reversed its cases based on pre-Rule law, holding instead that a defendant's remedy for a Rule 11 violation would thereafter be to have his guilty plea set aside and his case remanded for a new hearing and opportunity to plead anew. Heiden v. United States, 353 F.2d 53 (9th Cir.1965). On certiorari, the Supreme Court resolved this conflict, holding that "the Ninth Circuit has adopted the better rule." McCarthy, 89 S.Ct. at 1172, 22 L.Ed.2d at 427.
 
 
 153
 By the time of the McCarthy decision, two things had changed since Rule 11 was adopted. First, the original rule had been amended to require the trial judge to address the defendant personally when ascertaining the facts required by the Rule. See id. 89 S.Ct. at 1171, 22 L.Ed.2d at 425. Second, the Court had just held in McCarthy itself that this procedure must be followed exactly to satisfy Rule 11. Id. 89 S.Ct. at 1171, 22 L.Ed.2d at 426. The Court recognized that these changes raised the separate issue of a defendant's remedy in case of noncompliance with the Rule as newly interpreted. Though it would still have been possible to follow existing law and hold a hearing to determine if noncompliance was harmless error, the Court chose to adopt the new remedy in light of its increased emphasis on strict compliance with procedural safeguards under the Rule. Id. 89 S.Ct. at 1173, 22 L.Ed.2d at 428.
 
 
 154
 Hence, the McCarthy court undertook to reinterpret Rule 11, as had the Ninth Circuit, in response to changed conditions. When it had finished doing so, the Rule had a new meaning--though not one word of it had been changed. No one thought the Court's only recourse was to amend the Rule itself. Similarly, our own court has participated in the continuing development of the law under Rule 11. United States v. Dayton, 604 F.2d 931 (5th Cir.1979) (en banc), cert. denied, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). After we did so, sitting en banc, the Rule's meaning in our Circuit has not been as it was. We would therefore conclude that whatever the state of pre-1946 law, Rule 35 was not intended to etch it in stone, and that today--almost 40 years later--we are not bound by that law when faced with an altered legal and constitutional landscape.
 
 
 155
 Our conclusion is buttressed by the fact that the state of the law of sentence correction was not so clear in 1946 as the majority suggests. In a nutshell, the claim is that, before Rule 35, the common law power to correct an illegal sentence at any time extended to void sentences only; those that were entered without jurisdiction:the sound rule is that a sentence is legal so far as it is within the provisions of law and the jurisdiction of the court over the persons and offense, and only void as to the excess when such excess is separable, and may be dealt with without disturbing the valid portion of the sentence.
 
 
 156
 United States v. Pridgeon, 153 U.S. 48, 62, 14 S.Ct. 746, 751, 38 L.Ed. 631 (1894). Relying upon the relatively few reported decisions, contemporary commentators had announced this view. See generally 5 G. Longsdorf, supra, Sec. 2468; 5 L. Orfield, Criminal Procedure Under the Federal Rules Secs. 35:1 to :3 (1967) (subchapter entitled "The Law Before Rule 35").
 
 
 157
 We think there is considerable doubt, however, whether this restrictive view of illegal sentences, one that developed in habeas corpus cases such as Pridgeon, survived the development of a motion practice to correct sentences. In Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392 (1941), the Supreme Court first sanctioned the use of a motion to the sentencing court for this purpose. See United States v. Bruce, 52 F.Supp. 150 (W.D.Ky.1943) (explaining development of common law motion to correct sentence), appeal dismissed, 188 F.2d 467 (6th Cir.1951). Holiday had been convicted and sentenced on two counts, one for bank robbery and the other for jeopardizing the lives of bank officials during the course of the robbery. He sought a writ of habeas corpus, claiming that the two counts charged only one offense and that only his first sentence was valid. Conceding that the first sentence was the only valid one, the Court held that habeas corpus was unavailable because Holiday had not served that sentence. The Court went on to approve a motion as the proper relief: "His remedy is to apply for vacation of the sentence and a resentence in conformity to the statute under which he was adjudged guilty." 313 U.S. at 349, 61 S.Ct. at 1017 (emphasis added).
 
 
 158
 The Holiday Court's broad language admits no limit on the resentencing power other than the statute itself. That the court would take a broader view of the "illegal sentence" when it was attacked by motion, rather than habeas corpus, makes sense when the source of the narrow view is understood. At that time, habeas jurisdiction extended to correct only such acts as were taken without jurisdiction, i.e. in excess of statutory authority. E.g., In Re Bonner, 151 U.S. 242, 254-56, 14 S.Ct. 323, 324, 38 L.Ed. 149 (1894); In Re Mills, 135 U.S. 263, 10 S.Ct. 762, 34 L.Ed. 107 (1890). Thus, in a habeas case, only the portion of the sentence in excess of the statute was within the court's limited jurisdiction. Since the motion approved in Holiday was not a collateral attack, cf. Heflin v. United States, 358 U.S. 415, 418 n. 7, 79 S.Ct. 451, 453 n. 7, 3 L.Ed.2d 407 (1959), the court's jurisdiction was arguably broader, extending to correct the entire sentence to "conform[ ] to the statute." Holiday, 313 U.S. at 349, 61 S.Ct. at 1017. See Kitt v. United States, 138 F.2d 842 (4th Cir.1943) (correcting all counts of a sentence on direct appeal), citing Williams v. United States, 168 U.S. 382, 389, 18 S.Ct. 92, 94, 42 L.Ed. 509, 512 (1897) (if only error on direct appeal was sentence in excess of statute, it would "only be necessary for the court below to enter a new judgment, imposing such fine or imprisonment, or both, as the statute permitted " (emphasis added)).
 
 
 159
 Our point is not that the pre-1946 majority view was other than that stated by the authorities cited by today's majority of our court. Rather, it is that developments shortly before adoption of Rule 35 indicate that the law was in flux, creating uncertainty as to the scope of a court's sentencing power when invoked by a motion. That uncertainty adds to our conviction that the drafters of Rule 35 did not intend to freeze the ongoing development of the law.
 
 
 160
 The plurality's final argument is that the weight of contemporary authority holds that only the invalid components of a multi-count sentence may be changed in a Rule 35 case. We think it clear, however, that many of these decisions, including those of our own court, have lost their precedential force, having been grounded in a view of double jeopardy that has been repudiated by the Supreme Court. E.g. Chandler v. United States, supra. A few others, it is true, cast their holdings in terms of the power given the court by Rule 35. United States v. DeLeo, 644 F.2d 300 (3d Cir.1981); United States v. Corson, 449 F.2d 544 (3d Cir.1971) (dicta); United States v. Welty, 426 F.2d 615 (3d Cir.1970); Pugliese v. United States, 353 F.2d 514 (1st Cir.1965).
 
 
 161
 The short answer to the plurality's argument that we should follow the law of other circuits has been given by Judge Brown, writing for a panel of our own court which recently took a contrary view of the power of courts to correct an illegal sentence under Rule 35. Johnson v. United States, 619 F.2d 366 (5th Cir.1980) (Brown, Hill and Randall, JJ.). If precedent alone were the answer to the questions posed to this en banc court, Johnson would end the matter.
 
 
 162
 The petitioner in Johnson was convicted of bank robbery in violation of 18 U.S.C. Sec. 2113(a), assault with a dangerous weapon during a bank robbery in violation of 18 U.S.C. Sec. 2113(d), and carrying a firearm unlawfully during the commission of a felony in violation of 18 U.S.C. Sec. 924(c)(2). He was sentenced to three concurrent prison terms of 20 years, 20 years, and 2 years respectively. He did not take a direct appeal from the convictions. Later, he brought an action under Sec. 2255 attacking the sentences. This court held that his Sec. 924(c) sentence was invalid under Simpson v. United States, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), that the Sec. 2113(a) sentence was invalid under Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1956), and that the Sec. 2113(d) count was the only basis for a sentence.
 
 
 163
 For present purposes, the most significant fact in Johnson was that Simpson had been decided long after Johnson's conviction became final. In order that Simpson could be applied retroactively without an independent analysis of the retroactivity question, this court accepted the government's concession that Johnson's Sec. 2255 petition could be treated as a Rule 35 motion. 619 F.2d at 368 n. 5.[22] Thus, treating the case as an appeal from the denial of a Rule 35 motion, our court held two sentences invalid and one valid. Then, expressly relying on our "supervisory" powers under 28 U.S.C. Sec. 2106, we remanded for resentencing on the valid count. Id. at 368. The stated purpose was to give the district court a chance to resentence with the knowledge that the maximum potential sentence was 25 years under one count, not 55 years under three (the court had given Johnson 20 years on the Sec. 2113(d) count).
 
 
 164
 An analysis of Johnson leads to one inescapable conclusion: this court recognized in that case that when Rule 35 speaks of an "illegal sentence," it speaks of the entire sentence comprising all counts. Since Johnson must be read as an appeal from denial of a Rule 35 motion, this appellate court had jurisdiction over the sentences on all counts only if Johnson's Rule 35 motion brought the entire sentencing plan into question. The Johnson court's action in vacating the sentences on valid counts simply cannot be reconciled with Henry's assertion that the phrase "illegal sentence" in Rule 35 is limited to the sentences on invalid counts. It is no answer to say, as does the plurality opinion, Typescript op. at 24 n. 16, that, in contrast to the present case, the Johnson court contemplated a sentence reduction--which is "simply different" from an increase. The manner in which the court changes a sentence may influence whether double jeopardy is implicated, but it bears no relevance whatsoever to the issue of the court's power over the sentencing scheme. Rule 35 either gives the district court power to correct the entire sentence or it doesn't; whether the exercise of the power is constitutional is an entirely separate question.
 
 
 165
 This analysis is borne out by the Sixth Circuit's recent Rule 35 decision in United States v. Moore, 688 F.2d 433 (6th Cir.1982). There, the prisoner had been sentenced to 15 years for putting lives in jeopardy during a bank robbery, and to 25 years for kidnapping during a bank robbery. The sentences were to run consecutively for a total of 35 years. Applying United States v. Hunter, 538 F.2d 1239 (6th Cir.1976), the court held that the two offenses merged and that a sentence should have been imposed on only the most aggravated count. In discussing the remedy, the court approved the approach in Hunter, which on direct appeal had vacated all sentences and remanded for resentencing on the one valid count, stating:
 
 
 166
 Accordingly, the order denying correction or reduction of sentence under Rule 35 is vacated and the case is remanded for further proceedings consistent with this opinion. On remand, the District Judge should particularly consider the impact of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931) and Papp v. Jago, 656 F.2d 221 (6th Cir.1981) [requiring reasons stated in the record for an increase in sentence after remand].
 
 
 167
 688 F.2d at 435. Though cryptic, the Moore decision clearly stands for two propositions. First, the remedy it selected shows that there is power to vacate sentences on all counts under Rule 35. Second, the citations to Pearce, Benz, and Papp indicate that the court thought the only limitations on the resentencing power were constitutional ones.
 
 
 168
 Our view of Rule 35 is also confirmed by the Second Circuit's recent treatment of the resentencing question after a successful Section 2255 petition. McClain v. United States, 478 F.Supp. 732 (S.D.N.Y.1979), vacated, 643 F.2d 911 (2d Cir.), cert. denied, 452 U.S. 919, 101 S.Ct. 3057, 69 L.Ed.2d 424 (1981), on appeal from remand, 676 F.2d 915 (2d Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982).
 
 
 169
 In an appeal from denial of a Section 2255 motion to correct a sentence similar to Henry's, the Second Circuit declined merely to vacate the Sec. 924(c) count, and instead vacated the entire sentence on all counts, remanding for resentencing. In so doing, the court refused to follow its prior cases on which the plurality relies, Typescript op. at 34, suggesting that such an action was inappropriate under Rule 35. 643 F.2d at 913 (discussing Miller v. United States, 147 F.2d 372 (2d Cir.1945) and United States v. Sacco, 367 F.2d 368 (2d Cir.1966) (to raise sentence on valid count on Rule 35 motion is double jeopardy)). By remanding for resentencing notwithstanding those decisions, the court strongly implied that the only limit on resentencing under Rule 35, as well as under Section 2255, is the double jeopardy clause. 643 F.2d at 913. On remand, the district court increased the sentence on the remaining counts, and the Second Circuit affirmed, rejecting the petitioner's double jeopardy claims on grounds similar to those we have stated here. 676 F.2d at 917-18.
 
 
 170
 Heflin and Johnson establish that, in the sentence correction context, motions under Rule 35 and petitions under Section 2255 are interchangeable. 358 U.S. at 417-18, 79 S.Ct. at 452-53; 619 F.2d at 368. Each provision states that prisoners may move to correct "the sentence." Accordingly, the Second Circuit's McClain decisions are direct authority for what that district court did in Henry's case, as are the Rule 35 decisions of our own court, Johnson, supra, and of the Sixth Circuit. Moore, supra. See also Sullivan v. United States, 485 F.2d 1352, 1354 (5th Cir.1973) (suggesting in dicta that in a Sec. 2255 case, appeals court may vacate all sentences and remand for resentencing within constitutional limits); Gonzalez v. United States, 247 F.2d 489 (1st Cir.1957) (approving change of sentence after remand in a Sec. 2255 case), cert. denied, 356 U.S. 913, 78 S.Ct. 672, 2 L.Ed.2d 586 (1958); Phillips v. Biddle, 15 F.2d 40, 41 (8th Cir.1926) (cited in McClain; remand for resentencing in habeas corpus case to comport with original sentencing plan), cert. denied, 274 U.S. 735, 47 S.Ct. 576, 71 L.Ed. 1311 (1927).
 
 
 171
 We see little to be gained by augmenting this already prolix opinion with a discussion of every other case supporting our views.[23] Significant authority supports both sides in the controversy before us. Since none of it bound us en banc, we were free to achieve the right result--one that made sense of Rule 35 in the context of the law as it exists today. This is, however, not to be.
 
 
 172
 The choice we face today is between a mechanical approach derived in major part from an 1874 view of double jeopardy--now long discredited, but pressed upon us by Henry as frozen in Rule 35 like a mastodon in a glacier--and a view of Rule 35 as developing to accommodate a rational approach informed by modern constitutional authority. A majority of the court chooses the former. Since we would unhesitatingly choose the latter, we respectfully dissent.
 
 GARWOOD, Circuit Judge, dissenting:
 
 173
 I join in Judge Gee's dissenting opinion, and append these remarks only to emphasize what appears crucial to me here, namely, that counts II and III charged but a single offense, neither requiring nor involving proof of any fact or element that the other did not. In such circumstances, the presence of two counts should not of itself be determinative for our purposes. If the statute cited in each of counts II and III had been section 111, the unitary nature of the offense would be even more evident and the sentence illegality would relate equally to each of those two counts, permitting action under Rule 35 as to each. Of course, count III cited not section 111, the correct statute, but rather the inapplicable section 924(c)(1). However, under Fed.R.Crim.Proc. 7(c)(3) miscitation of the statute is not of itself controlling, except as it prejudices the accused. See Williams v. United States, 168 U.S. 382, 387-89, 18 S.Ct. 92, 93-94, 42 L.Ed. 509 (1897); United States v. Welch, 656 F.2d 1039, 1059 n. 26 (5th Cir.1981), cert. denied, 456 U.S. 915, 102 S.Ct. 1768, 72 L.Ed.2d 173 (1982); United States v. Duncan, 598 F.2d 839, 854 n. 11 (4th Cir.), cert. denied, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). Here, resentencing on the basis of section 111 and at a lesser level than originally imposed for the single offense involved in counts II and III has removed any prejudice.
 
 
 
 [1]
 Because the Henry and James cases arise out of the same criminal trial and present the same issues, we discuss in detail only the Henry case. We point out significant differences between the two cases in the footnotes
 
 
 [2]
 This opinion replaces the panel opinion in this case, which was automatically vacated upon the granting of rehearing en banc. United States v. Henry, 680 F.2d 403, vacated for en banc reconsideration, 693 F.2d 31 (5th Cir.1982); see Local Rule 17
 
 
 [3]
 James, but not Henry, was also sentenced under a fourth count to five years' imprisonment (to be served concurrently with his other sentences) for unlawfully possessing an unregistered machine gun in violation of 26 U.S.C. Sec. 5861(d) (1976). The sentence under this fourth count is not at issue in this case
 
 
 [4]
 James also challenged only his sentence under section 924(c)(1)
 
 
 [5]
 Our en banc opinion addressed only Henry's case. A panel of this court later issued the following unpublished per curiam opinion in the James case:
 In light of the decision of the United States Supreme Court in Busic v. United States, ... and consistent with our en banc decision in United States v. Henry, ... the sentence is VACATED and the case is REMANDED to the district court for further proceedings, consistent with those decisions.
 United States v. James, No. 79-3762 (5th Cir. August 26, 1980) (citations omitted).
 
 
 [6]
 The relevant portion of the district court's opinion reads:
 We note that the Court of Appeals for the Fifth Circuit in remanding this case for sentencing in accordance with Busic, did not vacate our imposition of sentence under Count Two or the entire sentence imposed under all three counts. The petitioner-defendant argues, and the government apparently concedes, that the defendant has only attacked the legality of his Count Three sentence.
 United States v. Henry, Criminal Action No. 4384(N), typescript op. at 6 (S.D.Miss. filed Feb. 27, 1981).
 
 
 [7]
 Although we note that rule 35 does not explicitly describe the circumstances under which a lawful sentence may be increased, there is case authority to the effect that a lawful sentence may be increased at any reasonable time before the defendant has begun to serve it. See, e.g., Burns v. United States, 552 F.2d 828, 831 (8th Cir.1977) ("The general rule is that where a legal sentence has been imposed, a federal court may not enhance a sentence of imprisonment once execution of the sentence has begun.") (emphasis in original); Llerena v. United States, 508 F.2d 78, 81 (5th Cir.1975) (same); 5 L. Orfield, Criminal Procedure Under the Federal Rules Sec. 35:31 (1967 & Supp.1982); cf. United States v. Cartwright, 696 F.2d 344, 348 (5th Cir.1983) ("[s]ound policy requires that courts should be able to revoke probation for a defendant's offense committed before the sentence commences") (citations omitted)
 
 
 [8]
 Part II of this opinion directly concerns only the Henry case because there was no en banc opinion in James. For the correlative opinion rendered in the James proceedings, see note 5, supra
 
 
 [9]
 For the relevant text of the district court's opinion, see note 6, supra
 
 
 [10]
 Busic apparently argued before the Third Circuit that he had challenged only his section 924(c), and not his section 111 sentence, see 639 F.2d at 943, 947. The Third Circuit, while noting the argument, neither agreed nor disagreed with it. What Busic may have been saying is that although his notice of appeal covered all his convictions and sentences, he actually challenged on brief only his section 924(c) conviction and sentence. While we have reviewed his notice of appeal, we have not seen his briefs and are therefore unable to resolve the unanswered question posed by his notice of appeal and his argument to the Third Circuit. Nor do we express any opinion on the question whether a conviction and sentence covered by a notice of appeal but not challenged on brief is "lawfully brought before [the court of appeals] for review," within the meaning of 28 U.S.C. Sec. 2106 (1976), so as to give the court of appeals jurisdiction to take any action with respect to it
 
 
 [11]
 Section 2106 provides:
 The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.
 28 U.S.C. Sec. 2106 (1976).
 
 
 [12]
 Since the Third Circuit's disposition of Busic on remand from the Supreme Court, 639 F.2d at 940, was under section 2106 as that section operates in a direct appeal case, and since the present proceedings have been brought under rule 35 long after the time for a direct appeal has come and gone, the procedural issues resolved in Busic--though superficially similar to those in Henry--are not the same as those before us today. We therefore express no opinion about whether we would follow the Third Circuit should the question ever be squarely presented to us
 
 
 [13]
 The mandate issued pursuant to our first Henry & James opinion, 528 F.2d at 999, read in pertinent part as follows:
 It is now here ordered and adjudged by this Court that the judgment of the ... District Court in this cause be, and the same is hereby, reversed as to [a codefendant] .... All other convictions are affirmed....
 Mandate of Mar. 19, 1976. In the absence of a superseding mandate from this court, the mandate of March 19 still controls, i.e., Henry's sentence under section 111 (count II) remains affirmed.
 
 
 [14]
 See, e.g., Ex parte Sibbald, 37 U.S. (12 Pet.) 488, 492, 9 L.Ed. 1167 (1838); Schwartz v. NMS Indus., Inc., 575 F.2d 553, 554-55 (5th Cir.1978) (citing seven other Fifth Circuit cases); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4478, at 792-93 (1981 & Supp.1983) ("Law of the case terminology is often employed to express the principle that inferior tribunals are bound to honor the mandate of superior courts within a single judicial system.... This principle is so straight-forward as to present few interesting problems.") (footnote omitted)
 
 
 [15]
 Rule 35 now provides:
 (a) CORRECTION OF SENTENCE. The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.
 (b) REDUCTION OF SENTENCE. The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.
 Fed.R.Crim.P. 35.
 
 
 [16]
 The government cites twelve cases that purportedly provide support by analogy for the opposite conclusion. We disagree
 Seven of the government's cases are direct appeal cases, which present none of the jurisdictional and finality problems present in this case. See United States v. Hodges, 628 F.2d 350, 353 (5th Cir.1980); United States v. McDaniel, 550 F.2d 214, 219 (5th Cir.1977); see also United States v. Marino, 682 F.2d 449, 455 n. 9 (3d Cir.1982); United States v. Pinto, 646 F.2d 833, 838 (3d Cir.), cert. denied, 454 U.S. 816, 102 S.Ct. 94, 70 L.Ed.2d 85 (1981); United States v. Davis, 573 F.2d 1177, 1180-82 (10th Cir.), cert. denied, 436 U.S. 930, 98 S.Ct. 2829, 56 L.Ed.2d 775 (1978); United States v. Moore, 540 F.2d 1088, 1091 (D.C.Cir.1976); United States v. Calhoun, 510 F.2d 861, 870 (7th Cir.), cert. denied, 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975). These cases, furthermore, also all involve what might be termed "impossible coexistence" situations, that is, situations where defendants had been sentenced under counts that could not coexist, e.g., because they described the same offense. In the Henry & James situation, on the other hand, it is clear that one of the two coexisting sentences is absolutely illegal (that under section 924(c)(1)) and the other legal (that under section 111). If the only legal problem in a case is that two sentences cannot coexist (but neither has "priority"), then it arguably makes sense to vacate both of them on a direct appeal. See also Rollins v. United States, 543 F.2d 574, 575 (5th Cir.1977) (another "impossible coexistence" case, where neither sentence had priority; both were vacated).
 The government also cites Johnson v. United States, 619 F.2d 366 (5th Cir.1980), which was a sentence correction case brought under 28 U.S.C. Sec. 2255 (1976). In Johnson, we remanded the case for reconsideration of sentences that the defendant had apparently not challenged because those sentences seemed "too harsh" in light of the district court's mistaken impression that the defendant could have been given 55 years instead of the maximum of 25 that was actually authorized. 619 F.2d at 368. We did not require reduction, but noted that "[t]he District Court should at least be able to reconsider the matter." 619 F.2d at 368. That situation, we submit, is simply different from the present one, which concerns a sentence increase in response to a successful rule 35 motion.
 The government further relies on McClain v. United States, 478 F.Supp. 732 (S.D.N.Y.1979), vacated, 643 F.2d 911 (2d Cir.), cert. denied, 452 U.S. 919, 101 S.Ct. 3057, 69 L.Ed.2d 424 (1981), on appeal from remand, 676 F.2d 915 (2d Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982). For an analysis of the McClain cases, see Section III.C and note 26, infra.
 The government finally relies on United States v. Busic, 639 F.2d 940 (3d Cir.), cert. denied, 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981). For an analysis of Busic, see Part II, supra.
 See also United States v. Kinsley, 518 F.2d 665, 670 (8th Cir.1975) (rule 35 case where defendant had received maximum number of years on all counts).
 
 
 [17]
 Section 3772 gives to the Supreme Court "the power to prescribe, from time to time, rules of practice and procedure with respect to any or all proceedings after verdict." 18 U.S.C. Sec. 3772 (1976)
 
 
 [18]
 For the full text of rule 35, see note 15, supra
 
 
 [19]
 United States v. Addonizio, 442 U.S. 178, 189, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979); accord, United States v. Krohn, 700 F.2d 1033, 1035-38 (5th Cir.1983) (noting that district court can act within reasonable time after 120 days if rule 35(b) motion is filed before that deadline); United States v. Rice, 671 F.2d 455, 459 (11th Cir.1982); United States v. DeMier, 671 F.2d 1200, 1205-07 (8th Cir.1982); United States v. Counter, 661 F.2d 374, 376 & n. 4 (5th Cir.1981). See also Twelfth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1981-82, 71 Geo.L.J. 339, 691-93 & n. 2463 (1982) (summarizing the law and citing cases)
 
 
 [20]
 When asked about this problem at oral argument, the government stated that the 120-day limitation in rule 35(b), as it was interpreted in Addonizio, does not apply in this case because all of Henry's sentences here were illegal and could be appropriately modified "at any time." For the reasons given in the rest of this opinion, we cannot agree that Henry's sentence under section 111 (count II) was in any respect illegal. The unlimited time period in rule 35(a) thus does not apply to that sentence
 
 
 [21]
 To the extent that Corson and Welty relied on Ex parte Lange, they were overruled in Busic, 639 F.2d at 943 n. 3, 953 n. 14. Neither Corson nor Welty, however, relied primarily on Ex parte Lange, and their interpretation of rule 35 still appears to be good law in the Third Circuit. See DeLeo, supra
 
 
 [22]
 A case that at first appears to reach a different result on facts very close to those of the present case is United States v. Busic, 639 F.2d 940 (3d Cir.1981), on remand from 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), cert. denied, 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981). Busic is, however, distinguishable. See Part II, supra
 But cf. also Fullman v. State, 431 A.2d 1260 (Del.1981) (construction of rule 35(a) of the Delaware Rules of Criminal Procedure, which is similar to the federal rule in conception, though not in wording).
 
 
 [23]
 The fact that a motion under rule 35 is one "made in the original case," Heflin, supra, 358 U.S. at 418 n. 7, 79 S.Ct. at 453 n. 7, does not, of course, mean that all of the judgments rendered at the original sentencing proceeding are automatically reopened upon the making of such a motion. That kind of reopening would fly in the face of the notions of finality that are so basic in our judicial system. Rule 35 was not designed as a vehicle to reopen final judgments long since past ripe for review
 
 
 [24]
 United States v. Goodwin, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); Chaffin v. Stynchcombe, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). There have also been a number of cases in the Fifth Circuit. See United States v. Krezdorn, 693 F.2d 1221 (1982), vacated for en banc reconsideration, No. 81-1404 (5th Cir. Mar. 2, 1983); Frank v. Blackburn, 646 F.2d 873 (5th Cir.) (en banc), cert. denied, 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 123 (1981); United States v. Thomas, 617 F.2d 436 (5th Cir.), cert. denied, 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980); Cole v. Wainwright, 614 F.2d 67 (5th Cir.1980); Jackson v. Walker, 585 F.2d 139 (5th Cir.1978); Hardwick v. Doolittle, 558 F.2d 292 (5th Cir.1977), cert. denied, 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978); United States v. McDuffie, 542 F.2d 236 (5th Cir.1976); United States v. Floyd, 519 F.2d 1031 (5th Cir.1975); Burton v. Goodlett, 480 F.2d 983 (5th Cir.1973)
 
 
 [25]
 In Thomas, supra note 24, we commented that the Supreme Court's decision in Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), might have signaled a retreat from Pearce and the subsequent cases through Blackledge. 617 F.2d at 438 n. 1. If so, that retreat appears to have ended at least partially with the Supreme Court's recent ruling in Goodwin. That case laid repeated emphasis on the importance of affording the prosecutor considerable discretion in the pretrial stages of criminal litigation:
 There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting.... At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins--and certainly by the time a conviction has been obtained--it is much more likely that the State has discovered and assessed all of the information against an accused.... Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.
 
 
 [102]
 S.Ct. at 2493 (emphasis added). The law concerning posttrial presumptions of judicial vindictiveness thus seems--from the defendant's point of view--to be as strong as ever. See Note, Prosecutorial Vindictiveness in the Criminal Appellate Process: Due Process Protection After United States v. Goodwin, 81 Mich.L.Rev. 194, 196 (1982)
 
 
 [26]
 We note Professor Van Alstyne's observation, made in a slightly different context, that the "sentencing authority is unlikely to announce that it has added to the defendant's term solely from a sense of antagonism to those who insist upon" pursuing their legal rights. See Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L.J. 606, 612 (1965)
 The existence of a statute or rule institutionalizing what the government has asked us to do in this case on an ad hoc basis, moreover, might well deal with many of the concerns that Henry's Pearce argument has raised. Vindictiveness would then play no part since the chilling of appeals does not in and of itself offend due process. See, e.g., Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978). Cf. DiFrancesco, supra, 449 U.S. at 126, 142, 101 S.Ct. at 431, 440 (noting that existence of a statute changes the nature of a constitutional inquiry under the double jeopardy clause).
 Finally, "vindictiveness" within the meaning of Pearce may be rebutted if it can be shown that the district court relied "upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." Pearce, supra, 395 U.S. at 726, 89 S.Ct. at 2081. The Second Circuit in McClain, for instance, based its holding--that an increased sentence on one count after a successful collateral attack on another does not violate the due process clause--on exactly this kind of postsentencing identifiable behavior of the defendant. McClain v. United States, 676 F.2d 915, 918-19 (2d Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982) (reference to defendant's involvement in five "incidents" while in prison). The district court in Henry, on the other hand, stated only that it had increased Henry's sentence under section 111 in order to conform to its original intent of dealing firmly with him "in view of the gravity of the offense in question." United States v. Henry, Criminal Action No. 4384(N), typescript op. at 11-13 (S.D.Miss. filed Feb. 27, 1981).
 
 
 *
 As matters have worked out, none of today's opinions commands a majority
 
 
 [1]
 As we shall see shortly, one of his points pertains to a peculiar circumstance of his case and a like one in James's. We discuss Henry's case only, since James's arises out of the same criminal incident, as well as the same trial. Thus they present the same issues
 
 
 [2]
 A prophetic partial dissent argued that Simpson 's rationale went further, forbidding application of the general firearms enhancement statute (Sec. 924(c)) in situations to which the more specific one, Section 111, applies. 586 F.2d at 376 (Rubin, J. dissenting)
 
 
 [3]
 "Considering the decision of the United States Supreme Court in Busic v. United States, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), the sentence is vacated and the case is remanded to the district court for further proceedings consistent with that decision." United States v. Henry, 621 F.2d 763 (5th Cir.1980) (en banc) (footnote omitted)
 
 
 [4]
 To be clearly distinguished is the case in which the facts about offense or offender do change on appeal. Suppose that X has been convicted of two counts of mail fraud for mailing letters A and B on the same occasion, pursuant to the same scheme, and is sentenced to one year on each count. On appeal it is held that the evidence does not support the jury finding that X mailed letter B. No fact relevant to the sentence for fraudulently mailing letter A has changed, but X has committed one charged crime only and hence is (in some sense) only half as guilty as the sentencing court had believed when it imposed the aggregate two-year sentence. The slightly extraneous offense for mailing letter B has been found not proved; X has committed one crime, not two. Hence the sentencing plan remains rational and there is no occasion to remand for resentencing: none as to letter B, for it was not mailed by X, and none as to letter A because it was and X has the same prior record. But had a so-called general sentence of the sort we disapproved in Benson v. United States, 332 F.2d 288 (5th Cir.1964) been given--say, three years on the two counts--a remand would have been required because the sentencing facts were changed on appeal
 Henry, by contrast, is the same Henry today as he always has been and his offense is the same offense. Nothing has been found not proved. All that has happened is that part of the law thought applicable to him has been found not to apply. That which remains applicable, however, authorizes his present sentence and more and requires no change in the sentencing plan--merely a revision in its components to carry it out.
 
 
 [5]
 To be sure, the majority can point out in response to these observations that, both before and after Rule 35, we have on occasion remanded when it was clear that the district court's only option was to vacate the invalid portion of a sentence, leaving the rest intact--in short, that we have engaged in useless acts before. See, e.g., White v. United States, 419 F.2d 374, 376 (5th Cir.1969), appeal after remand, 440 F.2d 978 (5th Cir.), cert. denied, 404 U.S. 839, 92 S.Ct. 129, 30 L.Ed.2d 72 (1971); Youst v. United States, 151 F.2d 666 (5th Cir.1945). All the same, while the point diminishes somewhat the force of our reasoning, that reasoning remains the most likely explanation for our earlier choice to remand rather than render
 
 
 [6]
 For that matter, even were we to conclude that our earlier mandate was intended to vacate only the Sec. 924(c)(1) sentence, and hence that the district court was powerless to correct the others, if we had the power to vacate all sentences then, we have it and could do so now--remanding by an order that explicitly permitted a final, rational resentencing proceeding. Not only is this construction of our mandate less rational than the one we would reach, it also would require yet another round of judicial proceedings--a needless round. Thus, though not based upon considerations of judicial economy, our construction would further that salutary goal
 
 
 [7]
 By contrast, the plurality continues, Busic was a direct appeal in which all aspects of the judgment were brought before the court, thereby giving it jurisdiction under Sec. 2106 over all sentences
 
 
 [8]
 As we explained above, although the trial judge increased the incremental sentence on neither remaining valid count--indeed, he reduced one from seven years to five--he did order that they run consecutively (for a total sentence of ten years) rather than concurrently (for a total of seven)
 
 
 [9]
 395 U.S. at 713, 89 S.Ct. at 2074. The longer sentence comprised the eight-year sentence that he received on retrial plus the time he had already served
 
 
 [10]
 This latter proposition--that those who seek new trial constitute a class subject to invidious discrimination by having their sentences increased--was summarily rejected by the Supreme Court and is no more. North Carolina v. Pearce, 395 U.S. 711, 722, 89 S.Ct. 2072, 2079, 23 L.Ed.2d 656 (1969)
 
 
 [11]
 395 U.S. at 720, 89 S.Ct. at 2078, and thus, it seems to us, necessarily--if impliedly--disapproving any supposed mechanical limitation on a judge's power to increase a sentence after service of it has begun
 
 
 [12]
 See 395 U.S. at 723, 89 S.Ct. at 2079
 
 
 [13]
 Our brethren of the Eleventh Circuit, with whom we have served and to whose expressions we give respectful attention, have taken the same view of Pearce in a very recent case of first impression there. United States v. Wasman, 700 F.2d 663 (11th Cir.1983). Wasman, having successfully appealed a first conviction, received a heavier sentence after his retrial for the same offense. Mindful of Pearce, the sentencing judge stated on the record his reason for imposing the heavier sentence: Wasman's intervening conviction of an extraneous offense. That offense had been committed before his first trial and he was charged with it at that time; the conviction occurred between his two trials
 On appeal he contended that the heavier second sentence denied him due process because it was not based upon "identifiable conduct on the part of [Wasman] occurring after the time of the original sentencing proceeding." North Carolina v. Pearce, 395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656 (1969). This was factually accurate, since his conduct that occasioned the extraneous conviction had taken place before either trial for the offense that resulted in the heavier sentence.
 Citing and quoting from numerous Supreme Court decisions handed down since Pearce, the Eleventh Circuit rejected Wasman's narrow reading of it. The Court's masterly discussion of the point is well-worth reading in its entirety. See 700 F.2d at 666-670. Here, we set out only a short portion:
 The thrust of Pearce is that increased punishment after appeal and reconviction violates a defendant's due process rights when it results from judicial vindictiveness. In setting forth its guidelines the Court's express objective was to assure absence of such retaliatory motivation. Reading the Court's Pearce opinion in its entirety and in light of the facts of that case, as we must, Armour & Co. v. Wantock, 323 U.S. 126, 132, 133, 65 S.Ct. 165, 168, 169, 89 L.Ed. 118 (1944), convinces us that increased sentences are not thereby limited to instances in which a defendant has committed an offense after the first trial. The target in Pearce was vindictive sentencing, not defendant misbehavior between trials. No reason exists for applying a phrase in the Pearce guidelines to circumstances bearing no relation to the purpose of those guidelines. There is on this record no evidence whatsoever that the enhancement here resulted from vindictiveness of Judge Roettger. Nor does Wasman argue that it did. In such circumstances, an increased sentence neither thwarts the purpose of Pearce and its guidelines nor offends constitutional due process considerations.
 700 F.2d at 668 (footnote omitted).
 
 
 [14]
 395 U.S. at 720, 89 S.Ct. at 2078 (footnote omitted). The Court pointed to Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), as having established that principle
 
 
 [15]
 We reject the plurality's suggestion, that United States v. Addonizio, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), was based upon notions of finality of sentences that prevent correction of a final judgment to implement the sentencing intent of the trial judge. In Addonizio, a Section 2255 petitioner argued that post-conviction changes in Parole Commission policies had frustrated the sentencing court's expectation of the time he would serve; the district court agreed and reduced the sentence to conform to its prior intent. For two reasons, the Supreme Court decided that this claim did not provide a jurisdictional basis for a Section 2255 attack. Neither supports the plurality's theory of finality
 First, Addonizio's claimed error met none of the established standards for collateral attack which have been narrowly limited to further the policy favoring finality of judgments. Id. at 184-86 & n. 11, 99 S.Ct. at 2239-41 & n. 11, 60 L.Ed.2d at 811-12 & n. 11. By contrast, Rule 35 is, as a motion in the original case, a broader exception to the finality of judgments than Section 2255. See, e.g., United States v. Shillingford, 586 F.2d 372, 375 (5th Cir.1978) (new decisions are more easily applied retroactively under Rule 35 than Section 2255). Second, the Court held that to allow a court to alter a sentence to implement what it had anticipated the Parole Board would do would eviscerate Congressional intent to vest the decision to release a prisoner in the executive branch. Id. at 188-90, 99 S.Ct. at 2242-43, 60 L.Ed.2d at 813-14. The district court in Henry's case did not enforce its "subjective expectation" of what the executive branch should have done, it merely adhered to the objective fact of its prior sentencing plan and to Congressional intent as expressed in the statutory penalty limitations applied therein.
 
 
 [16]
 Fully suffered it, having paid his fine
 
 
 [17]
 United States v. Busic, 639 F.2d at 949
 
 
 [18]
 "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." 449 U.S. at 135, 101 S.Ct. at 436, quoting Bozza v. United States, 330 U.S. 160, 166-67, 67 S.Ct. 645, 648, 91 L.Ed. 818 (1947)
 "While Pearce dealt with the imposition of a new sentence after retrial rather than, as here, after appeal, that difference is no more than a conceptual nicety." 449 U.S. at 135-36, 101 S.Ct. at 436-37, quoting North Carolina v. Pearce, 395 U.S. at 722, 89 S.Ct. at 2079.
 "The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." 449 U.S. at 137, 101 S.Ct. at 437.
 
 
 [19]
 A preliminary draft added a treatise citation following the reference to "existing law." Advisory Committee of Criminal Procedure, Federal Rules of Criminal Procedure, Second Preliminary Draft 132 (1944) (citing 5 G. Longsdorf, Cyclopedia of Federal Procedure Sec. 2468 (1929))
 
 
 [20]
 18 U.S.C. Sec. 3772 (1976) gives to the Supreme Court "the power to prescribe, from time to time, rules of practice and procedure with respect to any or all proceedings after verdict."
 20a 18 U.S.C. Sec. 3772 (1976). See note 20, supra. Congress has made different grants of authority to the Supreme Court to promulgate various rules of criminal procedure. Rules such as Rule 35, governing proceedings after verdict, are truly judge-made. They need not be reported to Congress, may be amended at any time, and become effective as the Court directs. Id. By contrast, rules governing pre-verdict proceedings must be reported to Congress and do not become effective until a statutory waiting period has passed. 18 U.S.C. Sec. 3771 (1976). See generally 1 C. Wright, Federal Practice & Procedure: Criminal Sec. 1 at 3-4 (2d ed. 1982).
 
 
 [21]
 Remarks to the effect that various provisions "continue" or "restate" existing law are extremely common, almost as boilerplate, throughout the Advisory Committee Notes. See, e.g., Advisory Committee Note to Rule 3, 18 U.S.C. app. at 1403; Rule 7(e), id. at 1413 ("continues" existing law); Rule 24(b), id. at 1450 ("embodies" existing law); Rule 32(a), id. at 1456 ("restatement" of existing procedure). Given the frequency of such language, it is significant that no authority has been found interpreting it as the majority attempts to do. Moreover, when we compare such statements to others in which the Advisory Committee notes that a rule "introduces an addition to existing law," e.g. Rule 21, id. at 1448; Rule 20, id. at 1447, we are convinced that the statement relied upon by Henry was intended merely to notify practitioners that no change was made by the adoption of the Rule, not that no change could ever be made
 
 
 [22]
 Because Rule 35 motions are made in the original case, Heflin v. United States, 358 U.S. 415, 417-18, 79 S.Ct. 451, 452-53, 3 L.Ed.2d 407 (1959), new decisions are automatically applied retroactively therein. United States v. Shillingford, 586 F.2d 372, 375 (5th Cir.1978). By contrast, in collateral attacks such as Sec. 2255 petitions, the retroactivity question must be independently addressed in each case. See Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Heflin approved the procedure of treating Sec. 2255 petitions as Rule 35 motions where appropriate
 
 
 [23]
 For example, courts have frequently acted to preserve the original sentencing plan when sentences on selected counts of multicount indictments have been set aside on direct appeal. See, e.g., United States v. Hodges, 628 F.2d 350, 353 (5th Cir.1980); United States v. McDaniel, 550 F.2d 214, 219 (5th Cir.1977); see also United States v. Marino, 682 F.2d 449, 455 n. 9 (3d Cir.1982); United States v. Pinto, 646 F.2d 833, 838 (3d Cir.), cert. denied, 454 U.S. 816, 102 S.Ct. 94, 70 L.Ed.2d 85 (1981); United States v. Davis, 573 F.2d 1177, 1180-82 (10th Cir.), cert. denied, 436 U.S. 930, 98 S.Ct. 2829, 56 L.Ed.2d 775 (1978); United States v. Moore, 540 F.2d 1088, 1091 (D.C.Cir.1976); United States v. Calhoun, 510 F.2d 861, 870 (7th Cir.), cert. denied, 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975). Of course, there is also Busic, supra